Ella Shure CAHEN TRUST, etc., et al.,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 13272.

United States Court of Appeals
Seventh Circuit.

July 19, 1961.

Benjamin M. Brodsky, Claude A. Roth, Bernard Weisberg, Chicago, Ill., for plaintiffs-appellants; Gottlieb & Schwartz, Chicago, Ill., of counsel.

Louis F. Oberdorfer, Asst. Atty. Gen., Joseph Kovner, Atty., Tax Division, and Lee A. Jackson, Harry Baum, James P. Turner, Attys., Dept. of Justice, Washington, D. C., James P. O'Brien, U. S. Atty., and Harvey M. Silets, Burton Berkley, Asst. U. S. Attys., Chicago, Ill., for appellee.

Before DUFFY and KNOCH, Circuit Judges, and PLATT, District Judge.

PLATT, District Judge.

Plaintiffs-appellants being the surviving residuary legatees under the Last Will of Nathan Shure, deceased, have appealed from a decision of the District Court denying a refund of a part of the Federal estate tax paid in the estate of Nathan Shure, deceased.

All of the facts were stipulated. From 1914 to 1934 six policies of life insurance were issued on the life of Nathan Shure naming the N. Shure Co. as the beneficiary and Shure relinquished all rights of ownership in the policies. Shure, on December 27, 1934, created an irrevocable trust, and transferred to the trust, with-

out consideration, 100 shares of Nathan Shure Realty Corporation. The trust derived its income from these securities and from investments of accumulations from income. August 20, 1935, Shure purchased the life insurance policies from the N. Shure Co. for their cash surrender value of $32,548.07. The beneficiary under each policy was then changed to the Nathan Shure Trust and Shure retained no incidents of ownership in the policies. Shure paid the Federal gift tax on this transfer and his estate was given credit on the Federal estate tax for the amount so paid. From August 20, 1935, to Shure's death on July 11, 1952, the premiums on the life insurance policies were paid by the Nathan Shure Trust. Nathan Shure paid the income tax on the portion of income which the Trustees used to pay premiums on these life insurance policies. The proceeds from the life insurance policies in the amount of $276,936.38 were paid to the Trustees of the Nathan Shure Trust. The District Court held that "[t]he premium payments made on all the policies * * * after January 10, 1941 by the trustees of the Nathan Shure Trust were 'paid * * * indirectly by the decedent' within the meaning of the provisions, as well as the legislative purpose of Section 811(g)(2)(A) of the Internal Revenue Code of 1939, as amended." As a result of this holding, that portion of the amount received by the trust from the life insurance policies which bore the same ratio to the total proceeds as the premiums paid after January 10, 1941, bore to the total premiums paid, was included in the gross estate of Nathan Shure, deceased, and was subjected to Federal estate tax. This increased the Federal estate tax $76,517.88 which appellants attempted to recover by this suit in the District Court. (This premium payment test was repealed by the Revenue Act of 1954, 26 U.S.C.A. § 2042.)

The appellants claim this decision of the District Court should be reversed for two reasons:

(1) That since decedent had no incidents of ownership in the policies, the payment of premiums by the trust out of the income from the trust funds was not an indirect payment of the premiums by the Insured after January 10, 1941, under Section 811(g)(2)(A) of the Internal Revenue Code of 1939, as amended. 26 U.S.C.A. § 811(g)(2)(A).

(2) That if this Section is applicable and so construed in the instant case, it is retroactive in its application and violates the Fifth Amendment to the Constitution.

In determining the issues, this Court must first look to the statutes and regulations involved.

Internal Revenue Code of 1939.
"§ 811. Gross estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \*

"(g) [as amended by Sec. 404(a) of the Revenue Act of 1942. 26 U.S.C.A. 1948 ed. § 811(g).] Proceeds of life insurance

"(1) Receivable by the executor. To the extent of the amount receivable by the executor as insurance under policies upon the life of the decedent.

"(2) Receivable by other beneficiaries. To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. \* \* \* For the purposes of clause (B) of this paragraph, the term 'in-

cident of ownership' does not include a reversionary interest. * * *"

§ 404(c), Revenue Act of 1942, 26 U.S.C.A. provides that:

"(c) Decedents to Which Amendments Applicable. The amendments made by subsection (a) shall be applicable only to estates of decedents dying after the date of the enactment of this Act; [October 21, 1942] but in determining the proportion of the premiums or other consideration paid directly or indirectly by the decedent (but not the total premiums paid) the amount so paid by the decedent on or before January 10, 1941, shall be excluded if at no time after such date the decedent possessed an incident of ownership in the policy."

Under Treasury Regulations 105, promulgated under the Internal Revenue Code of 1939, as amended in 1942:

"§ 81.27 [As amended by T.D. 5239, 1943 Cum.Bull. 1081, and T.D. 5699, 1949–1 Cum.Bull. 181. Federal Tax Regulations, 1954, U.S. Code Congressional & Administrative News, p. 818] Insurance receivable by other beneficiaries.

"(a) In case of decedent dying after December 31, 1947. (1) The regulations prescribed under this paragraph (except as otherwise indicated in this section) are applicable only in the case of decedents who died after December 31, 1947. In such cases, the amount of the aggregate proceeds of all insurance on the life of the decedent not receivable by or for the benefit of his estate must also be included in his gross estate, as follows:

"(i) Such insurance (not includible under subdivision (ii) of this subparagraph) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in the proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, and

"(ii) Such insurance with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any person.

"(2) The purchaser of insurance upon the life of the decedent is attributed to the decedent even though the premiums, or other consideration, are paid only indirectly by the decedent. As thus used, the phrase 'paid indirectly by the decedent' is intended to be broad in scope. For example, if the decedent transfers funds to his wife so that she may purchase insurance on his life, and she purchases such insurance, the payments are considered to have been made by the decedent even though they are not directly traceable to the precise funds transferred by the decedent. A decedent similarly pays the premiums or other consideration if payment is made by a corporation which is his alter ego or by a trust whose income is taxable to him, as, for example, a funded insurance trust. A payment is also made by the decedent if the decedent's employer makes the payment as compensation for services. * *"

Appellants first contend that since all the premiums on the life policies were paid by the Trustees of the Nathan Shure Trust after 1935, when the policies were transferred to the trust, Section 811 (g) of the Internal Revenue Act of 1939, as amended by the Act of 1942, should not apply.

■ The effect of the amendment of the Revenue Act in 1942 to include proceeds of life insurance in the gross estate of a decedent will be in better perspective after a brief review of the prior Acts and regulations. (For changes in Acts and regulations see Estate of Ellis Baker, 1958, 30 T.C. 776, 781–782.)

The Revenue Act of 1939 read in part:
"§ 811. Gross estate
 * * * * * *

"(g) Proceeds of life insurance.
"To the extent of the amount receivable by the executor as insurance

under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life." U.S.Code, 1940 ed., Title 26, § 811(g), p. 2164.

This statute in substance remained the same until it was materially changed by the 1942 amendment of the Revenue Act. The regulations changed from 1918 at various times down to the Treasury Regulations 105, § 81.27 adopted after the 1942 amendment. The prior regulations provided for either the premium payment test, or the incidents of ownership test, or both. Estate of Ellis Baker, supra. The Treasury Regulations, T.D. 5032, 1941–1 Cum.Bull. 427, approved January 10, 1941 provided as follows:

"Article 25 * * * of Regulations 80, 1937 edition * * * amended as herein indicated.

"In lieu of the second paragraph of article 25, * * * the following is substituted:

"The term 'insurance' refers to life insurance of every description, including death benefits paid by fraternal beneficial societies operating under the lodge system. Insurance receivable by beneficiaries other than the estate is considerd to have been taken out by the decedent where he paid, either directly or indirectly, all the premiums or other consideration wherewith the insurance was acquired, whether or not he made the application. Such insurance is not considered to have been so taken out, even though the application was made by the decedent, if no part of the premiums or other consideration was paid either directly or indirectly by him. Where a portion of the premiums or other consideration was actually paid by another and the remaining portion by the decedent, either directly or indirectly, such insurance is considered to have been taken out by the latter in the pro-

portion that the payments therefor made by him bear to the total amount paid for the insurance. * * *"

"Article 27 * * * is amended to read as follows:

"Art. 27. Insurance receivable by other beneficiaries.—The amount in excess of $40,000 of the aggregate proceeds of all insurance on the decedent's life not receivable by or for the benefit of his estate must be included in his gross estate as follows:

"(1) To the extent to which such insurance was taken out by the decedent upon his own life (see article 25) after January 10, 1941, the date of Treasury Decision 5032, and

"(2) To the extent to which such insurance was taken out by the decedent upon his own life (see article 25) on or before January 10, 1941, and with respect to which the decedent possessed any of the legal incidents of ownership at any time after such date or, in the case of a decedent dying on or before such date, at the time of his death. * * *"

Congress by the 1942 amendment of the Revenue Act in Section 811(g) and Section 404(c) adopted the substance of the Treasury Regulations of January 10, 1941, and established in the statute both the premium payment test and the incidents of ownership test. It eliminated the $40,000 exemption and omitted "policies taken out by the decedent upon his own life." By such action, Congress definitely intended the premium payment test to be used. The amendment used the words "paid * * * indirectly by the decedent." The word "indirectly" means: "* * * circuitous * * *; not leading to aim or result by the plainest course or method or obvious means; * * * roundabout; * * * not resulting directly from an act or cause but more or less remotely connected with or growing out of it." Webster's New International Dictionary. The amendment described no method of indirect payment. In United States v. Public Utility Comm'n., 1953, 345 U.S.

295, at page 315, 73 S.Ct. 706, at page 717, the Supreme Court set forth the rule on construction of a statute:

"Where the language and purpose of the questioned statute is clear, courts, of course, follow the legislative direction in interpretation. Where the words are ambiguous, the judiciary may properly use the legislative history to reach a conclusion."

This Court is therefore justified in resorting to and should use the legislative history in the construction of the amendment of 1942.

This Court now turns to the "Committee Reports—Revenue Act of 1942" (IRB, Cum. Bull., 1942–2, July–December, 1942.) which sets forth on pages 417–418:

"Section 404 of the bill amends the existing law governing the inclusion of the proceeds of life insurance in the gross estate of a decedent. The amendment not only eliminates the existing exclusion of $40,000 for certain proceeds other than those receivable by the executor but also sets forth explicitly the criteria of their includibility in the gross estate. Recognizing the testamentary nature of insurance on the life of the decedent, both where premiums are paid, directly or indirectly, by him and where he possessed at the time of his death some incident of ownership, your committee proposes to include all proceeds of such insurance in the gross estate.

"The increase in the specific exemption from $40,000 to $60,000 compensates in some measure for the discontinuance of the $40,000 exclusion."

At page 490 of the same Cum. Bull.:

"Section 404. Proceeds of Life Insurance.

"This section is designed to clarify the status of proceeds of life insurance under the estate tax.

\*     \*     \*     \*     \*     \*

"The inclusion in the gross estate of proceeds which are payable to beneficiaries other than the executor is to be determined for the purposes of this section by criteria set forth therein. These criteria are (1) the payment of premiums or other consideration by the decedent for the insurance, and (2) incidents of ownership possessed by the decedent at death. If either of these criteria is satisfied the proceeds are includible in the gross estate. The section provides with respect to the premium payments test that insurance purchased with premiums, or other consideration, paid directly or indirectly by the decedent, shall be included in the gross estate in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance.

\*     \*     \*     \*     \*     \*

"Payments of premiums or other consideration by the decedent include payments made by him directly or indirectly. This provision is intended to prevent avoidance of the estate tax and should be construed in accordance with this objective. For example, if the decedent transfers funds to his wife so that she may purchase insurance on his life, and she purchases such insurance, the payments are considered to have been made by the decedent even though they are not directly traceable to the precise funds transferred by the decedent. A decedent similarly pays the premium or other consideration if payment is made by a corporation which is his alter ego or by a trust whose income is taxable to him, as, for example, a funded insurance trust. Payment is also made by the decedent if the decedent's employer makes payment as compensation for services. These examples merely illustrate the concrete application of the provision."

(The Senate Committee Report, No. 1631, 77th Congress, Second Session, contained the foregoing language. 1942–2 Cum. Bull. pages 504, 676.)

In the light of the foregoing history, Congress must have intended by the amendment of 1942 to maintain a stable application of Section 811(g), and also intended that the amendment be construed broadly "to prevent avoidance of the estate tax." The Committee Report even went further and set forth various examples of situations to which the amendment should be applied. The Nathan Shure Trust must be examined in view of the broad application of Section 811(g) (2) (A) of the Internal Revenue Code of 1939, as amended.

Nathan Shure created a trust in December, 1934, and transferred the life policies to the trust in 1935. The trust read:

"The Trustees agree that they will receive said securities * * * and such additional securities, property * * * as may be transferred, * * * and delivered to the Trustees to become a part of the principal of the Trust Fund; also the *proceeds* of such policies of insurance issued upon the life of the Settlor, wherein the Trustees are made the beneficiaries thereunder; *' * *" (Emphasis supplied.)

The Trustees were directed to pay $3,000 to each of four beneficiaries, and empowered to sell or exchange the trust property, or any part thereof, the same as if they were the owners. The Article in the trust on insurance stated:

"The Trustees shall pay the premium * * * on any policy or policies of life insurance upon the life of the Settlor wherein the Trustees shall be named as beneficiaries or on any policies of insurance contracted for the protection and security of the Trust."

The beneficiaries under the trust were the Settlor's wife and children, and their issue. There was a possibility of failure of issue and a reversionary interest existed in the Settlor, which was not an incident of ownership under Section 811(g) (2). The life insurance policies were transferred to the trust in 1935 when Shure was 67 years of age as evidenced by the face of the policies.

A reasonable construction of the trust would indicate that Shure intended the Trustees to pay the premiums on the life insurance policies since they agreed to receive the "proceeds" of the life policies. The proceeds of the policy means the fulfillment of the promise by the insurer to pay the face of the policy on the death of the insured. When the policies were transferred to the trust, three of the policies had no cash value. If there came a time when the premiums could not be paid, plus the $3,000 to each of the beneficiaries, this Court feels sure the Trustees under the terms of the trust would have refused without an order of a court of equity to have cashed the policies for their surrender value in order to pay the beneficiaries. Shure not only financed the trust, but paid the income tax on the portion of the trust income used to pay the premiums. Evidently, he was required to pay this income tax. Burnet v. Wells, 1933, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439; Title 26 U.S. C.A. § 677. (Historical Notes thereunder show similar provisions in prior Acts.) One of the examples in the Committee's Report portrays a situation similar to the payment of premiums by the instant trust, viz.: "A decedent similarly pays the premium * * * if payment is made * * * by a trust whose income is taxable to him, as, for example, a funded insurance trust." The Nathan Shure Trust presents a "circuitous" or "roundabout" method of paying the premiums on life policies, more or less remotely connected with or growing out of the trust which Nathan Shure created.

■ This Court, therefore, holds that the premiums which purchased the life insurance policies here involved after January 10, 1941, were paid indirectly by the decedent and that the proportionate share of the proceeds of these life insurance policies must be included in the gross estate of Nathan Shure deceased, as held by the District Court.

The appellants insist that this Court should follow Helvering v. Reybine, 2

Cir., 1936, 83 F.2d 215, 216, reversing 1934, 31 B.T.A. 314; Estate of Edmund W. Mudge, 1956, 27 T.C. 188, and Estate of Newcomb Carlton, 1960, 34 T.C. 988. Reybine was decided prior to the 1942 amendment of the Revenue Act, and under the statute and regulations then in force. The impact of the 1942 amendment, coupled with the legislative history of the Act, destroyed the effect of this decision. It must be noted that there is a difference in the language of the trust of the instant case wherein it expressly provided not only for the payment of the premiums, but also that the Trustees agreed to receive the "proceeds" of the policies.

The Tax Court in Mudge followed Reybine and failed to give any attention to the 1942 amendment of the Revenue Act or to the Committee Report. In the Carlton case, the Tax Court relied upon Mudge and it is now on appeal to the United States Court of Appeals for the Second Circuit.

 The appellants place weight upon the acquiescence of the Commissioner of Internal Revenue in Mudge. IRB, Cum. Bull., 1957–1, p. 4. In effect, appellants attempt to invoke the doctrine of estoppel against the Commissioner because he has taken a different position here than he did in Mudge. Estoppel as a general rule is not applicable to federal officers. There was no reliance on the acquiescence since the trust was created in 1934. The acquiescence in Mudge does not estop the Commissioner from insisting upon the imposition of the tax here. See, Securities and Exchange Commission v. Culpepper, 2 Cir., 1959, 270 F.2d 241; Yates v. United States, 9 Cir., 1955, 225 F.2d 146, reversed on other grounds 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356.

Appellants next contend that Section 811(g) (2) (A) of the Internal Revenue Code of 1939, amended in 1942, is unconstitutional when applied to the facts in this case, as being in violation of the Fifth Amendment to the Constitution of the United States. This Court believes that the Supreme Court in United States v. Manufacturers Nat. Bank, 1960, 363 U.S. 194, 80 S.Ct. 1103, 4 L.Ed. 1158, completely refutes the appellants' contention. The facts in the instant case cannot be sufficiently distinguished from the facts in Manufacturers National Bank, so as to avoid the effect of this precedent.

Appellants and appellees agree that a refund should be allowed because of a deduction from the gross estate of reasonable attorneys' fees incurred in this proceeding. Section 81.34 as amended by T.D. 5596, 1948–1 Cum.Bull. 127; Federal Tax Regulations, 1954, U.S.Code Congressional & Administrative News, § 81.34, p. 825. In order to provide for this refund, the cause is remanded to the District Court to fix reasonable attorneys' fees as a deduction from the gross estate, and allow a refund accordingly. In all other respects the decision of the District Court is hereby affirmed.