298 F.2d 415
 ESTATE of Newcomb CARLTON, Deceased, Winslow Carlton and The Chase Manhattan Bank, Executors, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
ESTATE of Newcomb CARLTON, Deceased, Winslow Carlton and The Chase Manhattan Bank, Executors, Respondent.
 No. 82.
 Docket 26930.
 United States Court of Appeals Second Circuit.
 Argued December 6, 1961.
 Decided January 18, 1962.
 
 Walter E. Beer, Jr., New York City, for taxpayer.
 L. W. Post, Atty., Dept. of Justice, Washington, D. C. (John B. Jones, Jr., Acting Asst. Atty. Gen., Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C., on the brief), for Comr. of Internal Revenue.
 Before MEDINA, SMITH and MARSHALL, Circuit Judges.
 SMITH, Circuit Judge.
 
 
 1
 Newcomb Carlton established a trust which was funded by certain securities and twenty-one life insurance policies, with a total face value of $237,620.00 on the life of the settlor. The trustees were directed to utilize the income from the securities to pay the premiums on the insurance policies and the grantor was to receive, during his life, any income in excess of that required to pay the premiums. In no calendar year from the inception of the trust in 1930, until the death of the decedent in 1953, were the dividends on the policies and the income from the securities sufficient to pay the expenses of the trust and the premiums due. From 1930 to 1936 the grantor made payments aggregating $36,080.78 and thereafter his son, Winslow Carlton, the beneficiary, made payments totaling $17,637.55 up to January 11, 1941 and $32,790.43 thereafter.
 
 
 2
 The Commissioner held that the entire proceeds of the life insurance, totaling $239,327.54, as well as the securities held in trust valued at $34,442.50 were includible in the gross estate of decedent.
 
 
 3
 The Tax Court, in a decision reported at 34 T.C. 988 (1960) upheld the Commissioner only as to the portion of the proceeds of the policies attributable to payments made directly by decedent prior to January 10, 1941, totaling $139,018.77, which were held includible in his gross estate because of the retention by decedent of certain powers[1] subsequent to January 10, 1941 which were held by the Tax Court to constitute an "incident of ownership" in the policies within the meaning of Section 811(g) (2) (A) of the Internal Revenue Code of 1939, as amended by Section 404 of the Revenue Act of 1942, c. 619, 56 Stat. 798, 26 U.S. C.A. § 811(g) (2) (A).[2] The taxpayer appeals this determination and challenges the constitutionality of the statute as applied.
 
 
 4
 The Commissioner appeals from the decision of the Tax Court that payments of premiums by the trustees did not constitute "indirect payments" by the decedent within the meaning of Section 811(a) (2) (A) of the Internal Revenue Code of 1939, as amended by Section 404(a) of the Revenue Act of 1942.
 
 I. Incidents of Ownership
 
 5
 Section 404(c) of the Internal Revenue Act of 1942 provides that the portion of the proceeds of policies of insurance on the life of decedent, attributable to premiums paid by him prior to January 10, 1941 are includible in his gross estate only if subsequent to that date he was possessed of an "incident of ownership" in the policies. The Tax Court concluded that:
 
 
 6
 "Decedent as grantor had reserved the right to direct the investment of the securities in the trust and to receive the income in excess of that necessary to pay the premiums. Decedent, having also reserved the right to discharge the trustees without cause and appoint trustees of his own choosing, was assured of having trustees who would follow his direction as to the investment of the trust funds. [Citation omitted.] The investment of the trust fund was not limited to investments approved by law for trust funds and investments could be made in common stocks * * *. Decedent * * * could have directed that all the securities * * * be sold and the proceeds placed in currently non-income producing stocks which in his opinion would increase in value or produce a higher income in some future year. This could have required borrowing against the insurance policies to pay the premiums thereon. These powers, reserved in decedent as grantor to handle the trust corpus in a way that might necessitate the use of the loan value of the insurance policies in an effort to increase the future income of the trust for the ultimate benefit of the grantor individually as well as for the trust, while differing in degree, are not distinguishable in principle from the rights reserved by the grantor of the trust in Estate of Myron Selznick [15 T.C. 716 (1950), affirmed 195 F.2d 735 (9 Cir. 1952)] * * * to increase his income from the trust by surrendering the insurance policies for cash and adding such cash to the corpus of the irrevocable trust the income of which he had retained for life. Decedent saw fit to reserve unto himself as grantor of the trust until December 7, 1943 powers and control over the trust that could have been exercised in such a manner as to affect the interests of the trust beneficiary in the insurance policies." Instant Case, 34 T.C. 988, 999 (1960).
 
 
 7
 Laying aside the extremely conjectural and altogether unrealistic course of conduct envisioned in the Tax Court, the decedent did not retain the right to order the sale of the securities. He reserved to himself individually only the power to withhold approval in the case of any proposed sale, investment or reinvestment so that while he might prevent the sale of securities he had no power to force such sale. While it may be true that this veto power reserved by the grantor was not a power in trust and could therefore be used selfishly, under the terms of the trust it was necessary for the trustees to exercise their judgment as to the wisdom of any sale or investment, and concur therein, before any action such as that envisioned by the Tax Court might be taken.[3] In exercising their discretion the trustees were bound to deal fairly and impartially between the beneficiaries of the trust. In re Hubbell's Will, 302 N.Y. 246, 97 N.E.2d 888, 47 A.L.R.2d 176, 178 (1951), and cases cited therein; Restatement, Trusts § 183 (2d ed. 1959). More specifically, absent specific instructions in the trust instrument the trustees could not have invested in non-income producing securities for they had a duty to Winslow Carlton, the ultimate beneficiary, to employ profitably the funds entrusted to them. In re Hubbell's Will, supra; Matter of Ayvazian's Estate, 153 Misc. 467, 477, 275 N.Y.S. 123, 136 (Surr. Ct.1934); In re Gordon's Will, 181 Misc. 536, 539, 40 N.Y.S.2d 888, 891 (Surr.Ct. 1943); Restatement, Trusts § 181 (2d ed. 1959). Nor might the trustees invest in unduly speculative securities, for a trustee is obliged not only to attempt to employ profitably the corpus but must also take care to preserve it. In re Wind's Estate, 1 Misc.2d 260, 145 N.Y.S. 2d 188 (Surr.Ct.1955); In re Fay's Estate, 155 N.Y.S.2d 789 (Surr.Ct.1956).
 
 
 8
 We conclude that the grantor did not have the power to force the trustees to do that which is prohibited by law — to manipulate the trust for the ultimate benefit of the grantor individually to the detriment of Winslow Carlton, the ultimate beneficiary of the insurance policies — (there is no claim that he ever attempted to exercise such a power), and therefore did not retain "an incident of ownership" subsequent to January 10, 1941.
 
 II. Indirect Payments
 
 9
 That portion of the proceeds of the policies which are attributable to premiums paid "directly or indirectly" by the decedent after January 10, 1941 are includible in his gross estate under Section 811(g) (2) (A), Internal Revenue Code, 1939. The Tax Court concluded that the payment of premiums by the trustees, from the trust income, did not constitute "indirect" payments by decedent, relying upon Estate of Mudge, 27 T.C. 188 (1956), acq., 1957 Cum.Bull. 4, which had followed this court's decision in Helvering v. Reybine, 83 F.2d 215 (2 Cir. 1936).
 
 
 10
 Reybine was decided several years prior to the adoption of the 1942 Amendments to Section 811(g) and construed the statute as it then existed,[4] i. e., absent a specific reference to payments which were made "indirectly" by the decedent.
 
 
 11
 If the plain wording of the statute should leave any doubt as to its applicability to the instant case, this is dispelled by the relevant committee reports.
 
 
 12
 "A decedent similarly pays the premium or other consideration if payment is made by * * * a trust whose income is taxable to him, as, for example a funded insurance trust." S.Rep. 1631, p. 235, 77th Cong. 2d Sess.
 
 
 13
 The income of a trust established by the grantor to maintain and preserve insurance policies on his own life, for the benefit of the natural objects of his bounty is clearly taxable to the grantor. Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439 (1932).
 
 
 14
 Not only was Reybine decided prior to the enactment of the 1942 Amendment, as pointed out by the Seventh Circuit which decided the same issue now before this court in favor of the Commissioner, Cahen Trust v. United States, 292 F.2d 33, 39 (7 Cir. 1961), but it is not in line with the modern course of decision which tends to place greater emphasis upon economic realities in the Income Tax as well as the Estate and Gift Tax areas, which should, incidentally, where possible, be interpreted in a logically consistent manner. For a general discussion see Paul, Federal Estate and Gift Taxation, § 10.36 (1946 Supp.); Lowndes & Kramer, Federal Estate and Gift Taxes, c. 12, § 11 (1956).
 
 
 15
 The taxpayer argues that the Commissioner is bound by acquiescence in Estate of Mudge, supra, and by having failed to raise the point below. No estoppel may be asserted against the Commissioner by virtue of his acquiescence in a former case not involving the same taxpayer, particularly where no action has been taken by the party before the court in reliance upon the acquiescence which is said to give rise to the estoppel, which would bar the Commissioner from asserting a theory of taxability in a particular case. Cahen Trust v. United States, supra, at 39; Securities and Exchange Commission v. Culpepper, 270 F.2d 241, 248 (2 Cir. 1941).
 
 
 16
 The failure of the Commissioner to urge the point below is undoubtedly due to our decision in Reybine which was applied by the Tax Court in Mudge to the 1942 Amendment. Subsequent to the decision of the Tax Court in the case at bar the Reybine case was distinguished by the Seventh Circuit, Cahen Trust v. Commissioner, supra, which refused to follow Mudge, Id., 27 T.C. at 39. Concluding, as we do, that the Cahen decision is sound, the decedent's estate may not escape its obligation to pay the tax. Where there are unusual circumstances, such as an intervening decision in point, an appellate court will consider a legal argument not made in the lower court. Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941). Cf. Uebersee Finanz-korporation, A. G. v. McGrath, 343 U.S. 205, 72 S.Ct. 618, 96 L.Ed. 888 (1952). Moreover, in the instant case the Tax Court did in fact rule upon the issue when it made a finding of law with respect to those premiums paid by the trustees, for the opinion states as follows:
 
 
 17
 "The payments of premiums by the trustees from the trust income * * * are not indirect payments by decedent. Estate of Edmund W. Mudge, 27 T.C. 188 (1956)."
 
 
 18
 The constitutionality of Section 811(g) (2) (A) as applied to premiums paid directly by the decedent has been upheld by the Supreme Court on the ground that the taxable event is the death of the insured at which time the rights of the beneficiary are "genuinely enlarged." United States v. Manufacturers National Bank, 363 U.S. 194, 80 S.Ct. 1103, 4 L.Ed.2d 1158 (1960). That case is indistinguishable in principle from the case before this court. Only that portion of the proceeds attributable to payments made after the passage of the statute is being subjected to taxation. The taxpayer argues that having established the trust the decedent was committed and could in no way escape the imposition of the Estate Tax on that portion of the proceeds attributable to premiums paid by the trustees. But the possibility that the tax laws may be altered always exists, and to say that an individual can render himself immune to future tax laws by the simple expedient of irrevocably committing himself to a course of action designed to minimize taxes under existing laws, is patently absurd. The tax is being levied not on property disposed of prior to the legislation but upon property growing out of payments made thereafter with funds considered by the law equivalent to those of the decedent.
 
 
 19
 The decision of the Tax Court is reversed on both appeals and the case is remanded for proceedings in accordance with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The indenture granted to the trustees the power:
 "To invest the principal of the Trust Fund in such investments, including preferred and common stocks, as they in their discretion may deem for the best interests of the Trust Estate, without being limited to such investments as are authorized by law for Trust Funds, and to retain, without responsibility for depreciation in principal value, any securities that may be deposited with the Trustees by the Grantor; provided, however, that during the life of the Grantor, no sales of securities or reinvestments shall be made except upon his direction or with his consent and approval in writing. Such direction or approval may be in general terms and may be modified from time to time."
 
 
 [2]
 "(c) [as amended by Section 503(a) of the Revenue Act of 1950, c. 994, 64 Stat. 906]Decedents to Which Amendments Applicable. — The amendments made by subsection (a) shall be applicable only to estates of decedents dying after the date of the enactment of this Act; but in determining the proportion of the premiums or other consideration paid directly or indirectly by the decedent (but not the total premiums paid) the amount so paid by the decedent on or before January 10, 1941, shall be excluded if at no time after such date the decedent possessed an incident of ownership in the policy. * * *"
 
 
 [3]
 The trust instrument conferred discretion on the trustees which was limited by the requirement that the approval of the grantor be obtained but it did not permit, or require, the trustees to abdicate their responsibilities. See note 1, supra
 
 
 [4]
 Section 302(g) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts:
 "(g). Proceeds of Life Insurance — To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."
 MEDINA, Circuit Judge (concurring).
 The majority opinion quotes from the decision of the Tax Court the hypothetical scheme that the Tax Court held the grantor might have put into effect, and from which it concluded that the grantor's reserved rights under the terms of the trust instrument constituted an "incident of ownership." I agree that this basis for the decision of the Tax Court is unrealistic and unlawful, but, in concurring in the reversal of the decision of the Tax Court, I would particularly emphasize the terms of the trust instrument itself.
 It is clear from the trust instrument that the trustees could not make non-income producing investments either for the purpose of setting up a situation that would make it necessary to borrow against the insurance policies to pay the premiums thereon, or, even without such purpose, if the effect of such investment in non-income producing securities might or probably would make such borrowing necessary. In the very first paragraph of the trust instrument the grantor directed that: "The Trustees upon the maturity of the said policies, will use their best efforts to collect the proceeds thereof * * * and will hold, invest, and reinvest such net proceeds and collect the income therefrom and will pay over the same as hereinafter provided." In the second paragraph the grantor transferred to the trustees securities and directed that they collect the income therefrom and, "During the lifetime of the Grantor, * * * apply the net income to the payment of the premiums upon the policies of life insurance deposited hereunder, and to pay quarterly to the Grantor, any balance of the net income not required for the purpose of paying such premiums." And elsewhere in the trust instrument the grantor provided that:
 "In case at any time the net income in the hands of the Trustees shall not be sufficient to pay the premiums then due on the policies of insurance deposited hereunder, the Trustees may invade the principal of the Trust Fund and use so much thereof as may be necessary to make up the deficiency, or may obtain loans on any of the policies deposited hereunder and use so much of the proceeds of such loans as may be necessary to make up the deficiency. The Grantor may, in case the net income in the hands of the Trustee shall at any time not be sufficient to pay the premiums then due on the policies of insurance deposited hereunder, pay to the Trustees, on account of income, any amount sufficient to make up such deficiency, and the Trustee shall accept and use such payment for such purpose."
 In the paragraph wherein the grantor stated his intention to part with, and transfer to the trustees, all rights to the insurance policies, the right to surrender them for their cash surrender values and the right to obtain loans on them are listed; however, these rights could of course be exercised only as directed by the grantor elsewhere in the trust instrument and in conformity with the purpose and intent of the trust. In other words, subject to the primary and clearly implied direction that the policies be preserved for and the proceeds paid to the grantor's son, the beneficiary. The same qualification applies to the power of the trustees to "invest the principal of the Trust Fund in such investments * * * as they in their discretion may deem for the best interests of the Trust Estate."
 Thus, from the trust instrument itself it is evident that the trustees were not empowered to borrow against the insurance policies to make investments; nor could they have embarked upon an investment program which would have required them to do so. The intent of the grantor, and the purpose of the trust, was to preserve the policies for the benefit of the grantor's son, and to do so by investing the trust principal so as to receive an income with which to pay the premiums on the policies.
 On the cross-appeal I also concur in the reversal of the Tax Court.