**ESTATE OF Willard F. ROCKWELL, Deceased, Willard F. Rockwell, Jr., and Mellon Bank, N.A., Executors, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 85–5209.

United States Court of Appeals, Third Circuit.

Argued Nov. 5, 1985.

Decided Dec. 26, 1985.

---

George R. Craig, Craig, Goehring and Harrison, and David A. Brownlee (argued), Kirkpatrick & Lockhart, Pittsburgh, Pa., for appellants.

Glenn L. Archer, Jr., Asst. Atty. Gen., Jonathan Cohen (argued), Michael L. Paup, David English Carmack and Phoebe A. Mix, Tax Div., Dept. of Justice, Washington, D.C., for appellee.

Before SEITZ, WEIS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal presents two questions related to federal estate taxes.[1] The primary question is whether the decedent, Willard F. Rockwell, possessed incidents of ownership in eight life insurance policies on his life at the time of his death. The tax court held that he did and that the insurance policies were includable in his gross estate for tax purposes. The second question concerns gifts made by the decedent several years before his death: is the appreciation on the gifts in the hands of the donees includable in the decedent's gross estate for tax purposes? The tax court held that the appreciation on the gifts, even though the gifts themselves were excludable from the gross estate, was taxable and we affirm. As for the primary question, we conclude that the tax court erred and that the eight life insurance policies are not includable in the decedent's gross estate.

## I.

All facts relevant to this appeal have been stipulated by the parties.

In 1928 Rockwell purchased eight insurance policies on his life issued by the Northwestern Mutual Life Insurance Company. Six months later, using a form provided by Northwestern Mutual, he assigned his right, title, and interest in each of the policies to his wife, Clara T. Rockwell (Clara), for her "exclusive use and benefit." He retained, however, the right to veto any designation of a person who did not have an insurable interest in his life as a beneficiary or an assignee. Rockwell's assignment reads, in pertinent part:

THE POWER TO EXERCISE ALL RIGHTS AND PRIVILEGES conferred upon the insured by the terms of said policies shall be vested solely in the said assignee, her executors, administrators, or assigns, and not in the insured, except that without the written consent of the insured no one shall be designated as beneficiary or contingent beneficiary who has not an insurable interest in his life, nor shall the said policies be assigned to any one (other than The Northwestern Mutual Life Insurance Company as security for a policy loan) who has not such insurable interest.

Shortly after, Clara executed a trust agreement, to which Rockwell consented, designating the Union Trust Company (now the Mellon Bank, a co-executor of Rockwell's estate and a petitioner in this appeal) as a corporate trustee beneficiary of the eight life insurance policies. She assigned the policies to Union Trust as trustee, with her and Rockwell's children named as beneficiaries. The trust agreement allowed the trustee to assign the trust property, which included the insurance policies, without limitation, so long as the assignments were "for the sole benefit of the beneficiaries." Clara waived the right to change the beneficiaries, but reserved the right to revoke the trust in whole or part during Rockwell's life. In effect, this meant she had the power to change beneficiaries. She restated the trust agreement in 1957 to include the issue of four of the five Rockwell children as beneficiaries, and amended

---

1. The tax court had jurisdiction to hear the taxpayer's petition under 26 U.S.C. §§ 6213 and 7442 (1982). This court has exclusive jurisdiction to review the tax court's decision under 26 U.S.C. § 7482 (1982).

the agreement in 1962 to include the issue of the fifth child. She deposited bonds in the trust to pay the premiums on the policies.

Clara died in 1965, with the trust agreement in full force. The Commissioner of Internal Revenue (Commissioner) concedes that with her death, the designation of beneficiaries to the policies became irrevocable, Rockwell's power to veto a change of beneficiaries having thereby become a nullity. At issue in this appeal is Rockwell's retained power to veto the assignment of the policies by the trust to a person lacking an insurable interest in his life.

As to the other issue, Rockwell made fifty-eight gifts of corporate stock in 1977. The gifts were each worth $3,016, and the first $3,000 of each gift is excludable by statute from Rockwell's estate. The executors of his estate (taxpayer) contend that the amount that each gift appreciated before Rockwell's death, or $508 a gift, is also excludable.

Rockwell died in 1978 at the age of 90. He was incompetent for the last nine months of his life, but his son, Willard Rockwell, Jr. (a co-executor of Rockwell's estate and a petitioner in this appeal) had a general power of attorney granted by Rockwell in 1947. The trustee never attempted to assign the policies.

The taxpayer excluded the proceeds of the policies and the appreciation of $508 on each of the 58 excludable gifts of stock from its estate tax return. The Commissioner assessed a deficiency, finding that some $270,000 for the policies and some $30,000 for the appreciation of the gifts should be included in Rockwell's gross estate. The taxpayer sued in tax court, which held that Rockwell's power to veto assignment of the policies to persons lacking an insurable interest was an incident of ownership and that appreciation on excludable gifts was not excludable from the

gross estate. The parties stipulate that the alleged estate tax deficiency on the excluded items is approximately $76,000.

## II.

■ The Supreme Court first applied an incidents of ownership test to life insurance in *Chase National Bank v. United States*, 278 U.S. 327, 335, 49 S.Ct. 126, 127, 73 L.Ed. 405 (1929). In finding that a decedent's retained power to revoke a policy on his life or change its beneficiary justified including the policy in the decedent's gross estate, the Court noted that "until the moment of death the decedent retained a legal interest in the policies which gave him the power of disposition of them and their proceeds as completely as if he were himself the beneficiary of them." 278 U.S. at 334, 49 S.Ct. at 127.[2] The purpose of an incidents of ownership test is to prevent the decedent from enjoying the effective ownership of property until death, and at the same time escape the tax on testamentary transfers by formally disposing of the property earlier. *See Estate of Connelly v. United States*, 551 F.2d 545, 551 (3d Cir.1977).

As enacted in the 1954 Internal Revenue Code, section 2042 provides in relevant part:

### § 2042. Proceeds of life insurance

The value of the gross estate shall include the value of all property—

\*  \*  \*  \*  \*  \*

(2) Receivable by other beneficiaries.— To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the *decedent possessed at his death any of the incidents of ownership,* exercisable either alone or in conjunction with any other person.

---

**2.** Until an amendment of the 1939 Internal Revenue Code in 1942, however, the crucial measure for whether a life insurance policy must be included in the decedent's gross estate was whether the decedent paid the policy's premiums, either directly or indirectly. Revenue Act of 1942, ch. 619 § 404, 56 Stat. 798 (1942) (adopting incidents of ownership test); *Lang v. Commissioner,* 304 U.S. 264, 268–69, 58 S.Ct. 880, 882, 82 L.Ed. 1331 (1938) (earlier versions of premiums test discussed).

26 U.S.C. § 2042 (1982) (emphasis added). An accompanying Treasury Regulation gives some guidance to the meaning of "incidents of ownership":

> [T]he term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the *right of the insured or his estate to the economic benefits of the policy*. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc.

Treas.Reg. § 20.2042–1(c)(2) (emphasis added). This regulation substantially reproduces the list of powers and interests provided in the Congressional reports that accompanied the predecessor of section 2042(2) in the 1939 Code. *See* S.Rep. No. 1631, 77th Cong., 2d Sess. 235 (1942), 1942–2 Cum.Bull. 677; H.R.Rep. No. 2333, 77th Cong., 2d Sess. 163 (1942). As this court has noted, the regulation in making economic benefit the core concept and not a mere example of incidents of ownership is in fact more favorable to the taxpayer than the legislative history dictated. *Estate of Connelly*, 551 F.2d at 547 n. 7. Another portion of the regulation deals specifically with the treatment of policies, such as those in the present case, that are held in trust:

> A decedent is considered to have an "incident of ownership" in an insurance policy on his life held in trust if, under the terms of the policy, the *decedent* (either alone or in conjunction with another person or person) *has the power* (as trustee or otherwise) *to change the beneficial ownership in the policy* or its proceeds, or the time or manner of enjoyment thereof, even though the decedent has no beneficial interest in the trust.

Treas.Reg. § 20.2042–1(c)(4) (emphasis added).

There is a split of authority as to whether the decedent must have some "right …

to the economic benefits of the policy," Treas.Reg. § 20.2042–1(c)(2), when the policy is held in trust, to be deemed to have incidents of ownership. Several courts have considered the question in determining whether a decedent's retained control over the time of enjoyment of the policies by beneficiaries is an incident of ownership. The Fifth Circuit has held that a decedent's control over the time of enjoyment of policies on his life constitutes an incident of ownership, even when the control offers no possibility of economic benefit to the decedent. *Estate of Lumpkin v. Commissioner*, 474 F.2d 1092, 1097 (5th Cir.1973); *Rose v. United States*, 511 F.2d 259, 263 (5th Cir.1972) (reading *Estate of Lumpkin* to hold that incidents of ownership need not confer a potential economic benefit). *See Terriberry v. United States*, 517 F.2d 286, 290 (5th Cir.1975), *cert. denied*, 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976).

■ Holding to the contrary, this court has concluded that power over a life insurance trust that gives no right to the economic benefits of the underlying policy does not constitute an incident of ownership.

> [The decedent's] sole power to select a settlement option with the mutual agreement of his employer and the insurer did not give him a substantial degree of control sufficient to constitute an incident of ownership…. *The power gave him no rights to the economic benefits of the policy*. He had no power which by itself has ever been held to constitute an incident of ownership. Notwithstanding withdrawal of acquiescence by the Commissioner, *Billings [v. Commissioner*, 35 B.T.A. 1147 (1937), *acq.* 1937–2 Cum.Bull. 3, *acq. withdrawn*, 1972–1 Cum.Bull. 3] remains viable and controls the instant case as held by the District Court. The proceeds of the insurance should not have been included in decedent's gross estate.

*Estate of Connelly*, 551 F.2d at 552 (emphasis added, citations and footnote omit-

ted),[3] *see id.* at 551. This approach has been followed in the Eighth Circuit. *Hunter v. United States*, 624 F.2d 833, 840 (8th Cir.1980). The Commissioner has also recently declined to follow the Fifth Circuit line of cases in circumstances where the decedent could not use his powers as trustee for personal benefit, and the powers devolved on the decedent as a fiduciary through a transaction subsequent to and independent of the decedent's original transfer of the policies. Rev.Rul. 84–179, 1984–2 Cum.Bull. 195, 196, *revoking* Rev. Rul. 76–261, 1976–2 Cum.Bull. 276.

Other courts have similarly found that economic benefit is dispositive in considering whether the decedent's fiduciary powers as trustee over policies on his life constitute incidents of ownership. Thus, the Sixth Circuit and the Court of Claims have found that a decedent possessed incidents of ownership by virtue of his fiduciary power as trustee, because he legally could use his power to benefit himself personally. *Estate of Fruehauf v. Commissioner*, 427 F.2d 80, 86 (6th Cir.1970); *Gesner v. United States*, 600 F.2d 1349, 1353–54 (Ct.Cl. 1979). The Second Circuit has similarly held that the decedent does not possess incidents of ownership by virtue of fiduciary responsibilities that do not confer economic benefit on the decedent. *Estate of Skifter v. Commissioner*, 468 F.2d 699, 704 (2d Cir.1972).

The court in *Estate of Connelly* distinguished *Estate of Lumpkin*, the Fifth Circuit case that held that control of the time of enjoyment of the policies constituted an incident of ownership even though the control could not economically benefit the decedent. The decedent in *Estate of Lumpkin* had the power to cancel the policy, to unilaterally change the time of enjoyment, and to assign the power to change the time of enjoyment. 551 F.2d at 549. The decedent in *Estate of Connelly* could change the time of enjoyment only with the consent of his employer and the insurer, could not assign this power, and could not cancel the policy.[4]

Similarly, Rockwell's retained power, in the circumstances of this case, is exceedingly narrow. Rockwell kept the power to veto an assignment of the policies to a person (other than Northwestern Mutual) lacking an insurable interest in his life. By the terms of Clara's trust—made irrevocable at her death—the policies could not be assigned in a way that was not to the benefit of the trust's beneficiaries, Rockwell's children and their issue, all of whom had an insurable interest in his life. The Commissioner proposes that Rockwell's retained power could have been called into play had the trustee chosen to assign the policies to a person lacking an insurable interest in Rockwell's life to secure a loan favorable to the trust beneficiaries. The Commissioner does not claim that this retained power could at any time redound to Rockwell's direct or indirect economic benefit.

We recognize that a veto power may constitute an incident of ownership where it grants the decedent control over the designation of the beneficiary. *Schwager v. Commissioner*, 64 T.C. 781, 790–91 (1975). The Commissioner has ruled that a decedent had incidents of ownership in a policy by virtue of retained powers identical to those in this case, finding that a consent or veto power is an incident of ownership if with it the decedent "had the *legal* capacity to affect the disposition of the insurance proceeds." Rev.Rul. 75–70, 1975–1 Cum.Bull. 301, 302 (emphasis in original). The decedent in Rev.Rul. 75–70 had assigned an insurance policy on his life to his wife, but retained the right to veto any designation of a beneficiary or any assignment of the policies to

---

**3.** The *Billings* case had held that "[t]he mere right to say when the proceeds of the insurance policies should be paid to the beneficiary does not amount to a control of the proceeds." 38 B.T.A. at 1152, *quoted in Estate of Connelly*, 551 F.2d at 548.

**4.** The court also questioned *Estate of Lumpkin's* reliance on cases applying other sections of the Code, under which specific language in Treasury Regulations controlled. 551 F.2d at 551.

a person who did not have an insurable interest in his life. *Id.* at 301. The circumstances of Rev.Rul. 75–70 differ dramatically from this case, however, because there the decedent's wife retained the otherwise unrestricted power to assign the policy and change its beneficiary. In this case, Clara's trust agreement and her death rendered Rockwell's veto power over a change in beneficiaries a nullity and effectively barred him from using his veto power over assignments for his economic benefit.

The Second Circuit has looked to surrounding circumstances to find that a retained veto power could not legally be exercised to the decedent's benefit and therefore did not constitute an incident of ownership. In *Estate of Carlton v. Commissioner*, 298 F.2d 415 (2d Cir.1962), the court rejected a theory that bears some resemblance to the Commissioner's theory in this case. The decedent had the right to veto the sale of securities funding a trust that held insurance policies on his life and a right to the proceeds of the trust that exceeded the policies' premiums. The Commissioner argued that with the trustees' cooperation the decedent could arrange the trust's investments so as to increase his income in some later year. The court considered this theory "extremely conjectural and altogether unrealistic," *id.* at 417, and concluded that "the grantor did not have the power to force the trustees to do that which is prohibited by law." *Id.* at 418. The trustees

would breach their fiduciary duty to the policies' beneficiaries if they acted in a way that favored the decedent. *Id.*

A further circumstance may be helpful in evaluating whether Rockwell's retained power constituted an incident of ownership. Although incidents of ownership are to be evaluated under section 2042(2) as of the decedent's death, courts have treated powers held at death differently when the powers came to the decedent subsequent to and independent of his purchase of the policies. *See Skifter*, 468 F.2d at 703–04 (significant that decedent gained fiduciary powers over a trust containing the questioned policy after he gave up all rights to the policy, in a way he could not anticipate); Rev.Rul. 84–179, 1984–2 Cum.Bull. at 196 (same). A review of the insurance law of Pennsylvania [5] reveals that Rockwell's statement of retained powers merely restated the law of Pennsylvania pertaining to insurable interests in life insurance policies, until Pennsylvania amended its law by statute in 1951.

Through at least 1940, Pennsylvania followed the rule that

> the assignment of a policy, whether in "good faith" or not, to one who has no insurable interest and who thereafter pays the premiums, is as contrary to public policy, and therefore as legally objectionable, as the original issuance of the policy to such a person would have been.

---

**5.** Although the parties did not discuss the choice-of-law issue, it is well-established that claimed incidents of ownership for federal tax purposes must be viewed in light of the applicable state law. Treas.Reg. § 2042–1(c)(5). *See, e.g., Estate of Madsen v. Commissioner*, 659 F.2d 897, 898 (9th Cir.1981) (state law community property question must be resolved to determine whether decedent had an incident of ownership in one-half of a policy on his life paid for by his wife from joint funds).

The policies were purchased by Rockwell, assigned to Clara, and placed in trust by her while both were residents of Pennsylvania, and the policies were delivered and all related documents were signed there. Under traditional policies of Pennsylvania law, the law of Pennsylvania governs the interpretation of the policies. *Jamison v. Miracle Mile Rambler, Inc.*, 536

F.2d 560, 562 n. 1 (3d Cir.1976). *See* 12 J. Appleman, *Insurance Law and Practice* § 7078 at 352 (rev. ed. 1981). Pennsylvania law is also to be followed if the "significant contacts" approach used by Pennsylvania courts in recent years is applied. *See Myers v. Commercial Union Assurance Cos.*, 485 A.2d 1113, 1116 (Pa. 1984).

While the taxpayer did not brief the history of Pennsylvania law as it applies to Rockwell's retained veto powers, this history supports the thrust of the taxpayer's general argument that Rockwell's retained powers were not incidents of ownership. We take judicial notice of the law of Pennsylvania as expressed in statutes and court decisions. *Lamar v. Micou,* 114 U.S. 218, 223, 5 S.Ct. 857, 859, 29 L.Ed. 94 (1885); *see United States v. Schmitt,* 748 F.2d 249, 255 (5th Cir.1984).

*Werenzinski v. Prudential Ins. Co. of America,* 14 A.2d 279, 281 (Pa.1940). *See generally* "Validity of assignment of life insurance policy to one who has no insurable interest in the insured," 30 A.L.R.2d 1310, 1377–81 (1953) (discussing the unusual state of Pennsylvania law in this area). A statutory change prior to Rockwell's retention of powers allowed Rockwell to assign the policies to a person lacking an insurable interest in his life, Act of May 17, 1921, P.L. 682, § 412, codified at 40 Pa.Stat.Ann. § 512 (Purdon 1971), but the statute was not amended to cover assignments made by persons other than the insured until 1951. 40 Pa.Stat.Ann. § 512 (Purdon 1971) and "Historical Note" that follows.

From the time Rockwell created his veto powers in 1929, until the amendment of the governing statute in 1951, Rockwell's retained powers restated the current law of Pennsylvania in requiring an insured's consent for assignment of a policy on his life to a person lacking an insurable interest. An assignment to a person lacking an insurable interest without the insured's consent was void as against public policy when the insured did not pay the premiums on the policy. Clara paid the premiums on these policies with securities she had deposited in the trust. Therefore, Rockwell retained no power that he could have chosen to give up. The subsequent change in the law that gave possible substance to his dormant power bears comparison with the acquisition of fiduciary powers over a policy by a decedent subsequent to his transfer of the policy, which the *Skifter* court considered. When, as in this case, the possible application of a retained power depends on a change in law subsequent to its creation, "it is difficult to construe this arrangement as a substitute for a testamentary disposition of the decedent." *Skifter,* 468 F.2d at 704 (subsequently acquired fiduciary power not an incident of ownership).

We believe that, in light of the circumstances surrounding Rockwell's retained power to veto assignment of the policies on his life to a person lacking an insurable interest, this retained power does not constitute an incident of ownership. There can be no suggestion that in the more than fifty years since Rockwell drafted the power he could have enjoyed any economic benefit from exercising it. Pennsylvania law mandated the veto power retained at the time Rockwell created it. Whatever vitality, if any, the veto power may have had at one time, Clara's death and the terms of the trust agreement excluded Rockwell from any possible economic benefit. Congress' purpose in requiring the inclusion of policies in a gross estate when the decedent retains incidents of ownership is to prevent taxpayers from enjoying property without paying tax on it. Rockwell by his retained power neither enjoyed the benefits of nor exerted the sort of control that ordinarily accompanies ownership of life insurance policies.

For the reasons set forth above, we conclude that the tax court erred in holding that the insurance policies on Rockwell's life were includable in his gross estate and we reverse its decision in this respect.

### III.

■ In 1977, Rockwell made fifty-eight gifts of corporate stock certificates, each worth $3,016. The stock had appreciated approximately 16 percent by the time Rockwell died. The taxpayer elected to take advantage of section 107(a)(2)(F) of the Technical Corrections Act of 1979, which provides that 26 U.S.C. § 2035 should read as follows:

(a) Inclusion of gifts made by decedent.—Except as provided in subsection (b), the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3-year period ending on the date of the decedent's death.

(b) Exceptions.—Subsection (a) shall not apply—

\*     \*     \*     \*     \*     \*

(2) to any gift to a donee made during 1977 to the extent of the amount of such

gift which was excludable in computing taxable gifts by reason of section 2503(b) (relating to $3,000 annual exclusion for purposes of the gift tax) determined without regard to section 2513(a).

See 26 U.S.C. § 2035 (1982) ("Transfers Made by Decedent During 1977"); Pub.L. 96–222, Title I, § 107(a)(2)(F), 94 Stat. 223 (1980). The parties agree that the effect of this provision is to exclude the first $3,000 of each of Rockwell's fifty-eight gifts in 1977 from his gross estate.

The taxpayer contends, however, that the 16 percent appreciation on the excluded portion of the gifts, or $508 a gift, should also be excluded, asserting: "[B]oth logic and policy dictate that where a $3,000 gift, which is actually owned by the taxpayer, is excluded from the gross estate, any appreciation on that excluded amount, which the taxpayer never owned, should also be excluded." We agree with the taxpayer that logic dictates that where an excludable gift has been perfected, there is no plausible reason for saddling the donor with the appreciation in the gift since its transfer. We cannot agree, however, that Congress—the body that has the power to determine whether the gift should be excluded in the first instance—has directed that policy should conform to logic.

The language of section 2035(b)(2) does not support the taxpayer's position. The provision excludes a gift made in 1977 from the gross estate "to the extent of the amount of such gift which was excludable in computing taxable gifts," and only the first $3,000 is excludable in computing taxable gifts. 26 U.S.C. § 2035(b)(2) (1982). See 26 U.S.C. § 2503(b) (1982) ("In computing taxable gifts ... $3,000 of such gifts ... shall not ... be included.").

The committee reports accompanying the technical correction legislation taxpayer elected to take advantage of plainly assume that the election would exclude $3,000 from the appreciated value of the gifts at the decedent's death:

> The amendment allows executors of decedents to elect with respect to all gifts made in 1977 ... to all donees to include in the decedent's gross estate only the excess of the *death time value* over the amount excluded in computing taxable gifts by reason of the $3,000 annual exclusion under section 2503(b). If an executor elects the application of the provision, there will be included in the decedent's gross estate the *death time value* less the amount excluded under section 2503(b) with respect to such gifts.

S.Rep. No. 96–498, 96th Cong., 1st Sess., at 87, *reprinted in* 1980–1 Cum.Bull. 558 (emphasis added, original emphasis deleted), U.S.Code Cong. & Admin.News 1980, pp. 316, 395; H.R.Rep. No. 96–250, 96th Cong., 1st Sess., at 66, *reprinted in* 1980–1 Cum. Bull. 517 (same). Although, as the taxpayer notes, Congress in passing the Technical Correction Act focused its attention on the treatment of the first $3,000 of each gift, its position on the sum from which $3,000 was to be excluded seems clear. The death time value of the gift—its appreciated value at death—is the measure from which $3,000 is to be excluded.

The tax court, therefore, correctly held that the appreciation on gifts excluded from the gross estate is includable in the gross estate and we affirm its decision on this issue.

### IV.

The decision of the tax court will be vacated insofar as it approved the inclusion of the life insurance policies in Rockwell's gross estate and the case remanded for further proceedings consistent with this opinion. The tax court's decision that appreciation on the excluded gifts is includable in the gross estate will be affirmed. Each side to bear its own costs.