## WADDELL *v.* WADDELL.

1. TRUSTS—PARTNERSHIP—SELF-DEALING—LIQUIDATION—PROFITS.
   Trial judge's finding in suit against surviving partner who also
   functioned as trustee under a trust agreement which had
   been executed by deceased partner and which conferred un-
   limited authority upon the trustee to exercise his discretion,
   that there was a grave question as to whether the trustee's
   sale of trust estate's interest in 2 partnership automobile sales
   agencies to himself, his son and other persons interested
   in the firms constituted a full liquidation of the partnership
   which had previously existed, without final liquidation there-
   of and that the trust estate was entitled to a share of the
   earnings of the partnerships after such sales is affirmed on *de
   novo* review.

2. JUDGMENT—ACCOUNTING—DISMISSAL WITH PREJUDICE.
   The dismissal of a suit against trustee for accounting with
   prejudice, pursuant to stipulation of the parties was determina-
   tive of the rights of the parties as of that time, including the
   interests of the minor children who were then represented
   by their mother and were safeguarded by reputable and com-
   petent counsel, the court was fully advised in the premises
   and acted in the best interest of all concerned.

3. TRUSTS—FIDUCIARIES—CONFLICTING INTERESTS.
   A fiduciary has a great moral obligation to refrain from plac-
   ing himself in relations which excite a conflict between self-
   interest and integrity.

4. SAME—CONFLICTING INTERESTS OF FIDUCIARY—SCRUTINY.
   The acts of a trustee who places himself in a position where
   self-interest conflicts with duty will be scanned with closer
   scrutiny by a court than if made in the usual course of
   business.

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 54 Am Jur, Trusts § 311 *et seq.*
[6] 54 Am Jur, Trusts §§ 130, 131.

5. SAME—PARTNERSHIP—SELF-DEALING—ALLOCATION OF EARNINGS.
    Trial court's allocation of earnings of partnerships to trust
      estate subsequent to trustee's sale of partnership assets to
      himself and purchase of government securities with the
      proceeds on a basis of 85 to 90% to the trustee for his con-
      tribution to the success of the firms and not to exceed 15%
      to capital investment of the trust estate *held,* equitable
      under record presented.

6. SAME—REMOVAL OF TRUSTEE—EVIDENCE—MISMANAGEMENT—BAD
    FAITH.
    Trustee of trust estate which involved the exercise of an
      unlimited amount of discretion is not removed as sought by
      beneficiaries in the absence of proof of mismanagement or
      bad faith.

Appeal from Mecosta; Pugsley (Earl C.), J. Submitted October 16, 1952. (Docket No. 11, Calendar No. 45,540.) Decided January 5, 1953. Rehearing denied March 10, 1953.

Bill by Stella Waddell, individually and as next friend for her sons, against John Waddell, individually and as trustee, and others for accounting. Decree for plaintiffs. Plaintiffs appeal. Affirmed.

*J. Donald Murphy* and *Reber & Reber,* for plaintiffs.
*Nuel N. Donley* and *Worcester & Worcester,* for defendants.

BUSHNELL, J. Plaintiff Stella Waddell is the widow of George Waddell, who died on November 30, 1941. She is the mother of James, Thomas and Patrick Waddell, who are minors, and Robert Waddell, who attained his majority subsequent to the commencement of a suit on December 23, 1949, for restitution and accounting. The defendants are: John W. Waddell, the younger brother of George, who was his partner in a business at Big Rapids; John C. Waddell, the son of John W.; M. J. Ken-

nedy, who was a partner of John W. and George at Cadillac, Michigan; John P. Freethy, a stockholder and the secretary and treasurer of Waddell Bros., Inc., at Traverse City, Michigan.

The Traverse City corporation bought, sold and repaired automobiles, and had a dealership franchise from the Buick Motor Company. The partnership at Cadillac sold Chevrolet and Buick cars. The Big Rapids partnership operated under a Buick and Pontiac franchise. John W. and George Waddell each had a 3/8 interest in the partnership at Cadillac. Kennedy had a 2/8 interest. The Traverse City corporation had a capitalization of $30,000, represented by 300 shares of the par value of $100 each, of which John W., George and Freethy each had 100 shares. George had been associated since 1917 with his brother, John, and others in the automobile business.

According to the bill of complaint, George Waddell was seriously ill on September 4, 1941, when he executed the trust agreement out of which the present litigation arose. Defendants dispute the claim of George's illness and assert that George had worked in the office up to the day of his death, which resulted from a coronary thrombosis.

The trust agreement between George Waddell, the settlor, and John W. Waddell, the trustee, was executed about 3 months before the death of George. It recites that deeds and assignments had been made transferring all of George's interests in the partnerships and his stock in the corporation to his brother, John W., as trustee, for the benefit of his wife and sons.

The powers of the trustee are unusually broad and provide that John should conduct the businesses as, in his judgment, he might deem expedient. He was authorized to appoint cotrustees and to execute all necessary instruments. It was agreed that George

might assist in the operation of the business by conferring and counseling with John as long as he was physically and mentally able, but that his ability in this respect was to be determined by John. George deprived himself of all right to make other and further disposition of the property included in the trust. Income was payable to the beneficiaries, in the discretion of the trustee, except as to certain specified amounts. The provisions regarding the disposition and distribution of the trust property upon the death of the settlor are significant and specific. They include authority for the exercise of the discretion of the trustee, with reasonable compensation for his services and reimbursement for his legitimate expenses. George indicated his wish and intent that the various businesses be continued so long as the trustee deemed it to be expedient and wise. Other provisions gave the trustee full authority "at any time he so desires and deems the same expedient to sell and convey all of the property covered by this trust."

After the death of George, his brother John continued to actively manage the businesses. In May of 1946, a suit for an accounting, similar to the instant suit, was commenced by the firm of Linsey, Shivel, Phelps & Vander Wal of Grand Rapids, acting for plaintiffs. John H. Vander Wal, a member of that law firm, made an extensive investigation into the operation of the businesses and thoroughly examined the books and records. As a result of that investigation a stipulation was filed on October 1, 1946, in which it was recited, among other things, that counsel had found that the operation of the trust by John W. Waddell had been for the best interests of the trust and the beneficiaries thereof, and that their future interests would be best subserved if Waddell continued as trustee. It was agreed between the present plaintiff, acting for her-

self and her minor sons, and the trustee, by their respective counsel, that the cause might be dismissed with prejudice. An order of dismissal was signed by the circuit judge who tried the instant case.

In his comprehensive 37-page opinion the trial judge stated:

"In connection with the making of the aforesaid stipulation and the signing of the order dismissing the suit by the court, it should be noted that the dismissal 'with prejudice' was not made without a careful consideration of the importance thereof, the matters involved and the interests of the minors at the hands of this court. It was not overlooked at that time that the transactions of the defendant in disposing of the George Waddell estate's stock in the corporation at Traverse City and its interest in the business at Cadillac in which the defendant took over those interests unto himself should be carefully scrutinized. It appeared, however, to the court, and obviously to plaintiffs' counsel as disclosed by the stipulation and the conferences of counsel with the court, that notwithstanding these irregularities, the interests of the trust estate as it appeared to all parties at that time had been carefully preserved. The amount of money transferred at that time in the sum of $90,235.43 seemed then, as now, to have represented a fair value of the trust assets, and the investment of the major portion of the same in war bonds and other safe securities seemed to be in harmony with the care and caution that should be observed by a trustee in the handling of a trust estate. It was also noted at that time that there had been a gain in the capital assets of the estate during the time the same had been handled by the defendant, when the amount of disbursements made in behalf of the plaintiff widow, Stella Waddell, were taken into account.

"Counsel for plaintiffs in that suit, as well as this court, were impressed with the apparent fidelity and disposition of the defendant to protect and pre-

serve the capital assets of the estate for the benefit of the plaintiffs."

The circumstances connected with the sale of the George Waddell estate's stock in the corporation at Traverse City, and its interest in the partnerships at Cadillac and Big Rapids may be summarized as follows:

The assets of George Waddell's estate, including his interest in the businesses were appraised shortly after his death by the United States internal revenue bureau at $93,207.48. Plaintiffs' auditors testified in the instant case that the book value of these assets as of the date of death was $79,880.73 at Big Rapids, $4,523.20 at Cadillac, and $11,060.20 at Traverse City, a total of $95,464.13.

On April 1, 1942, John W. transferred 1/2 of his interest in the Big Rapids partnership to his son, John C. Waddell, recognizing in the new partnership agreement the existence of the estate's 1/2 interest therein. On June 9, 1942, new partnership articles were executed and filed relative to the business at Cadillac. This agreement recognized the existence of the 3/8 interest of the estate in the partnership, a 2/8 interest of defendant Kennedy, and a 3/8 interest held by John W. Waddell.

In September of 1944, the trustee, believing it for the best interest of the estate to dispose of its holdings in the business at Cadillac, appointed Wallace Henry, president of the Citizens State Bank at Grand Rapids, Meta Ruegsegger, the bookkeeper and office manager at Big Rapids, and Nuel N. Donley, an attorney in Big Rapids, who subsequently represented John in the accounting action, as appraisers of the estate. The interest of George Waddell in the business at Cadillac was determined by them to be $5,250. Plaintiffs' auditors testified in the instant case that the book value was $5,332.01.

In September of 1944, the trustee sold George's interest in the business at Cadillac to the partnership (*sic*) allocating 2/3 thereof to himself, so that, as he now claims, Kennedy thereafter held a 3/8 interest and John W., individually, held a 5/8 interest in this partnership. In an explanatory entry in the estate records made in 1945, John stated that he had asked the appraisers to make a written recommendation of a course of action, and that the transfer which he made was in concurrence with that recommendation "now in the files of said trust," and that he had invested the proceeds of the sale in cash and government securities.

In April of 1942, John sold all of George's stock in the Traverse City corporation for $10,000. John W. had these 100 shares transferred 1/3 to Freethy, 1/3 to himself, and 1/3 to his son, John C. John W. claims that this stock was sold under the authority granted in the trust agreement, and for its fair value. It had been appraised by the United States Internal Revenue Bureau at $9,373.41 as of the date of George's death.

In December of 1945, John appointed Henry, Donley and Alfred S. Cramer, a certified public accountant, as appraisers of the Big Rapids property. They fixed its value as of November 30, 1945, at $87,607.79. Plaintiffs' auditors testified that the book value of the Big Rapids property was $86,-452.86. A transfer from Waddell Bros. & Company was made on the books and records of the trust estate, of $87,607.79, to cover George's interest in the Big Rapids business.

The result of these transactions, all of which occurred prior to the stipulation and discontinuance with prejudice of the accounting action in 1946, was the receipt by the trust estate of government bonds and cash totaling $102,857.79. The particular items are as follows: September 20, 1943, from the sale

of the Traverse City stock, $10,000; September 19, 1944, from the sale of the trust estate's interest in the Cadillac partnership, $5,250; November 30, 1945, from the sale of the estate's interest in the Big Rapids partnership, $87,607.79. Since December 1, 1945, the trust estate has not received any share of the profits, nor has it been charged with any expenses or losses in any of the businesses involved in this litigation.

Plaintiffs argue that, because of the alleged illegal self-dealing on the part of John W. Waddell, in violation of his fiduciary obligation, the several sales are voidable and that the trust should be given its rightful share of the profits earned in the several businesses since December, 1945. They base this claim on the following grounds:

"(1) That there has never been a termination and winding up of the trust estate of George Waddell and the partnership between him and the defendant.

"(2) That the sale of the stock of the deceased in the Traverse City corporation to the defendant and his son, John C. Waddell, was invalid;

"(3) That the sale of a 2/8 interest in the Cadillac business to the defendant was also invalid; and

"(4) That the segregation of the assets set aside for the benefit of the trust estate as of November 30, 1945 was an illegal transaction."

Defendants argue in support of their theory of *res judicata* that the stipulation and order dismissing the first suit constitutes a ratification of all that had happened prior thereto and estops plaintiffs from going into transactions prior to the date of the dismissal of the former suit. It is further claimed by John W. Waddell that all of his acts were authorized by the trust agreement and by the articles of partnership.

The trial judge, in analyzing the effect of the dismissal, points out that for more than 4 months prior

thereto conferences were held between counsel and the court during plaintiffs' investigation, and that the court acted only after being fully advised as to the facts. He stated that there could be no question as to the court's duty to carefully scrutinize the sale of the assets of the trust estate by the defendant trustee to himself, in the absence of express authority in the trust agreement or by order of the court. He pointed out that all the circumstances were known to plaintiffs' counsel before the stipulation was executed and the order was entered, and said in his opinion that the transactions in the aggregate inured to the benefit of the estate and that "there was an absolute absence of any symptom of fraud." The trial judge further observed that the record in the instant case is barren of any proof that a sale price prior to 1946 was available for more money than was realized for the Traverse City stock. He also noted that the trust agreement expressly gave John W. Waddell, as trustee, full authority "to convert and reconvert, invest and reinvest, sell and convey, exchange, lease, pledge or mortgage the whole or any portion of the funds or property, either real or personal, held in trust." The partnership agreement provides for a period of 2 years in which to wind up the affairs of the partnership and expressly gave the—"remaining partner * * * the right to purchase at any time within 2 years from and after * * * the death of any partner, the interest of such partner in the business, assets and good will by paying the value of such interest as determined by said inventory, together with 6% upon such value since said inventory."

Plaintiffs insist that the right of the surviving partner to purchase expired under the agreement at the end of the 2-year period after death. The trust agreement was executed subsequent to the partnership agreement and contemplates the continuance

of the partnership, and, therefore, necessarily implies an extension of the 2-year winding-up period. The trust agreement specifically gives unlimited authority to the trustee to exercise his discretion. The trial judge stated that there appeared to be merit to the contention that these agreements when read together contemplated that purchases might be made by the surviving partner. He also pointed out that, between the date of the death of George and the transfers, business conditions were not too good, and that it appears conclusively by the great weight of the undisputed evidence that no one had any knowledge at that time "beyond a purely speculative guess that the years to follow would be as prosperous as they have since proved to be in the automobile business under the competent and aggressive management of the defendant." The trial judge was satisfied that the trustee, in disposing of the assets and investing the proceeds in government securities, acted in keeping with the legal responsibility imposed upon him to safeguard the assets of the trust and refrain from engaging in speculative ventures.

The trial judge concluded, as do we on this review *de novo,* that there is—"a grave question whether the action then taken can be said, as a matter of law, to constitute a full liquidation of the partnership which had previously existed, without final liquidation between the deceased partner, George Waddell, and the surviving partner, John W. Waddell." There being such a doubt, we agree with the trial judge that this doubt should be resolved in favor of the estate, and that the trustee should account for the estate's share of the earnings of the 2 partnerships from and after November 30, 1945. We also agree with the decision of the trial judge that the settlement of the accounting suit, and the dismissal of that cause in 1946, should be deter-

minative of the rights of the parties as of that date. The interests of the minor children were then represented by their mother as their next friend, and were safeguarded by reputable and competent counsel. Furthermore, the court was fully advised in the premises and acted in the best interest of all concerned.

We shall not further lengthen this opinion by reviewing the mechanics employed by the trial judge in determining the basis of accounting and expenses to be charged against defendants since November 30, 1945. We must, however, before concluding this opinion, distinguish some of the authorities out of the many cited and quoted from by plaintiffs in support of the proposition that the transactions were illegal and self-dealing, in violation of public policy, and voidable upon proper proof thereof. The discussion of the applicable law in *Re Culhane's Estate,* 269 Mich 68, is illustrative. We there stated, quoting from Mr. Justice COOLEY's opinion in *Sheldon v. Estate of Rice,* 30 Mich 296, 300 (18 Am Rep 136):

"It has been uniformly held that administrators, or other persons standing in the position of trustees, are not to be suffered, either directly or indirectly, to acquire interests in, or bargain for benefits from the property which, in their relation as trustees, they hold, manage, control or sell for others. They cannot occupy the position of buyers, and, as such, interested to procure the property at the lowest possible price, when, as trustees, they are to make sale; and their duty requires them to obtain the highest price at which the property may be fairly sold. The law esteems it a fraud in such a trustee to take, for his own benefit, a position in which his interest will conflict with his duty (see cases cited). The reasons for this general rule are fully explained in several of the cases above cited, and it has been well said that 'the rule stands upon our great moral obligation to refrain from placing ourselves in rela-

tions which ordinarily excite a conflict between self-interest and integrity.' *Michoud* v. *Girold,* 4 How (45 US) 502, 554 (11 L ed 1076)."

However, we also said in the *Culhane Case*:

"In determining whether the trustee was guilty of negligence or violation of the trust duty, we must be governed by the circumstances of the particular case."

In that case, where a stockholder and director identity between the 2 financial institutions was involved, we said:

"The inseparable interests of the bank (depository) and trust company (trustee) forces us to hold that the trustee could not be single minded in the discharge of its duty as administrator when it deposited and permitted trust funds to remain in a bank in which its stockholders and directors were identical."

The fundamental yardstick is that:

"Where a trustee places itself in a position where self-interest conflicts with duty, its acts will be scanned with closer scrutiny than if made in the usual course of business."

See, also, 54 Am Jur, Trusts, §§ 453 and 456.

An examination of the facts in the *Culhane Estate Case* shows that they are different from those presented in the instant case, and, in agreeing with the views expressed by the trial judge, we do not in any manner recede from the position we took in the *Culhane Case.*

We have recently had occasion to examine these principles in connection with a limited partnership in *Vanderplow* v. *Fredricks,* 321 Mich 483. In that case the general partner served notice of dissolution upon the limited partners and proceeded thereafter to operate the business as a sole proprietor,

using the partnership assets. He excluded the limited partners from the premises and denied them access to the books and records. More than this, he took the position that real property, purchased with partnership money, was not, with respect to its increase in value, a part of the partnership assets. The trial judge agreed with the position taken by the general partner. We reversed and remanded for a determination of the amount due the limited partners, including the appreciated value of the real property.

In the instant case the fair value of the estate's interest in 1945 was set aside from time to time in government bonds and cash, and thereafter the estate incurred no further risks in a speculative commercial operation. The trial judge worked out a formula for the allocation of earnings, subsequent to the segregation of the assets and provided for deductions for expenses of management and operation. In stating that these earnings should be allocated in proportion to capital and to management, he said:

"The proofs upon this hearing give 85 to 90% credit for the success of the business to the personality, skill and management of John W. Waddell, and not to exceed 15% to capital investment. There are no proofs to the contrary."

We have examined the mechanics employed and feel that they provide a fair and reasonable basis for settlement. The interests of the beneficiaries of the trust are adequately protected by this equitable solution of a difficult and perplexing problem. The trial court in this instance, in the light of the unusual circumstances of the case, reached a fair and equitable solution.

There is no reason for removing defendant John W. Waddell as trustee of the trust estate in the absence of proof of mismanagement or bad faith.

The questions regarding the admission of evidence were properly resolved by the trial judge, and we deem it unnecessary to discuss other matters raised in this appeal.

The decree of the trial court is affirmed, with costs to appellees.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, SHARPE, BOYLES, and REID, JJ., concurred.