**ESTATE of Harry R. FRUEHAUF, Deceased, National Bank of Detroit, Harry R. Fruehauf, Jr., and Thomas L. Munson, Co-Executors, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 19535.**

United States Court of Appeals, Sixth Circuit.

June 3, 1970.

---

E. James Gamble, Detroit, Mich., for appellants; Dykema, Wheat, Spencer, Goodnow & Trigg, Detroit, Mich., of counsel.

Janet R. Spragens, Dept. of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Crombie J. D. Garrett, Benjamin M. Parker, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellees.

Before PECK, McCREE and COMBS, Circuit Judges.

PECK, Circuit Judge.

Harry R. Fruehauf (hereinafter "the decedent") died on April 29, 1962, in Detroit, Michigan. An estate tax return filed with the district director of internal revenue for Detroit, Michigan, was subsequently determined by the Commissioner of Internal Revenue (hereinafter "the Commissioner") to disclose a deficiency in the tax upon the estate. The basis of the Commissioner's deficiency determination was the failure by the executors to include in decedent's gross estate the value of the proceeds of six insurance policies on decedent's life in which the Commissioner determined that decedent possessed "incidents of ownership" at the time of his death. This appeal is from the Tax Court's affirmance [1] of the Commissioner's deficiency determination.

All six of the policies on decedent's life were applied for, paid for, and owned by decedent's wife, Vera Berns Fruehauf,

1. The opinion of the Tax Court is reported at 50 T.C. 915 (1968).

who was also the primary beneficiary of each policy. She died testate approximately fourteen months prior to the date of decedent's death. Among other things, her will bequeathed her residuary estate to a trust, the net income of which was to be paid to her husband, the decedent, for life with a remainder over to her issue *per stirpes*. The will also assigned to the trust created from the residuary estate the life insurance policies owned by the wife at the date of her death and gave to the executors and trustees certain powers over those insurance policies. Finally, the will named decedent as a co-executor of his wife's estate and as a co-trustee of the trust created by her will. The pertinent provisions of the will are as follows:

"*Eighth:* All the rest, residue and remainder of my estate of whatever kind and wherever situate, I give, devise and bequeath to the trustees hereinafter named to be held in trust for the following uses and purposes:

(1) To pay the entire net income from the corpus of the trust quarterly, or at such other intervals as he requests, to my husband, Harry R. Fruehauf, so long as he lives.

(2) If at any time or from time to time during the life of my husband the trustees other than my said husband shall, in their sole and uncontrolled discretion, determine that the resources of my husband are insufficient to enable him to maintain the standard of living to which he was accustomed during the year preceding my death and such deficiency cannot be met out of the assets of any other trust of which my husband is a beneficiary, the trustees shall distribute to my husband such portion of the principal of the trust as shall, in the sole and uncontrolled discretion of the trustees other than my husband, be deemed sufficient to enable him to maintain such standard of living.

(3) Upon the death of my said husband, the entire remaining corpus of the trust shall forthwith be assigned, paid over, conveyed and distributed, free of trust, to my then surviving issue per stirpes."

\* \* \* \* \* \*

"*Tenth:* My Executors and my trustees may retain for such periods as they determine advisable any insurance policies owned by me at my death on the life of any other person, and pay the premiums on such policies whenever they become due out of income and/or principal as they shall see fit, and cause themselves to be designated as the beneficiaries thereof, or they may, at any time, sell and assign any of such policies to the person whose life is insured for the cash surrender value thereof, or they may surrender any of such policies for their cash surrender value, or they may, at any time, convert any of such policies into paid up policies in whatever amounts may be provided by the terms of such policies. With respect to any policies retained by them, they may arrange for the automatic application of dividends in reduction of premium payments and they may borrow on any of such policies, make premium payments from the funds so derived, and repay such loans."

At the date of decedent's death the administration of his wife's estate had not been completed. There had been no distribution to the trust established under paragraph Eighth of his wife's will, and neither decedent nor the other trustees named in the will had been appointed by the probate court. All of the assets of the wife's estate which would have been distributed to the testamentary trust were distributed directly to the Fruehauf's son, Harry R. Fruehauf, Jr.

The Commissioner determined that the proceeds of the six insurance policies on decedent's life were includible in his gross estate under § 2042(2) of the Internal Revenue Code of 1954 (hereinafter "the Code"), which provides in part as follows:

"Sec. 2042. Proceeds of Life Insurance.

"The value of the gross estate shall include the value of all property—

\* \* \* \* \* \*

"(2) Receivable by other Beneficiaries.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person."

The immediate question raised by the above quoted language is whether the decedent possessed "any of the incidents of ownership" in the policies on his life at the time of his death, and this raises the additional question of the meaning of the term "incidents of ownership." Fortunately, the treasury regulations promulgated under the statute provide a definition of the term sufficient for the purposes of this case. The regulations provide in pertinent part as follows:

"[T]he term 'incidents of ownership' is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc." Treas.Regs. § 20.2042–1 (c) (2).

Comparison of the above-quoted regulation with the pertinent provisions of the wife's will, *supra*, readily discloses that decedent did possess a number of powers over the policies in the nature of "incidents of ownership" in his fiduciary capacity as executor of his wife's will and trustee-designate of the testamentary trust. The issue was thus narrowed, both in this Court and in the Court below, to the question of whether the powers over the policies which decedent here held constitute "incidents of ownership" in view of the fact that he held these powers in a fiduciary capacity only. The Tax Court answered this in the affirmative and held that therefore the proceeds of the policies were includible in his gross estate.

■ While the opinion of the Tax Court clearly related the holding to the facts of this case, certain language in that opinion is susceptible to interpretation as a broad *per se* rule that possession by a decedent of powers constituting incidents of ownership in insurance policies on his life, regardless of the capacity in which they are held, always requires inclusion of the proceeds of the policies in the decedent's gross estate. In reasoning to this conclusion the Tax Court placed heavy reliance on a number of cases [2] which arose under § 2038 (and its predecessor sections) of the Code. Section 2038 charges a decedent's gross estate with any property of which he made an *inter vivos* transfer if, at the date of his death, he possessed the power to "alter, amend, revoke, or terminate" the transfer. The statute also provides that the existence of the power is to be determined "without regard to when or from what source the decedent acquired the power." Thus, the Tax Court reasoned:

"There is no doubt at all but that sections 2038 and 2042 are parts of a tax pattern to make includable in the gross estate property over which the decedent held various powers affecting beneficial enjoyment. Since case law makes immaterial for purposes of section 2038 the capacity in which the powers are held, it is not logical to

---

2. E. g., Van Beuren .v. McLoughlin, 262 F.2d 315 (1st Cir. 1958), cert. denied, 359 U.S. 991,. 79 S.Ct. 1120, 3 L.Ed.2d 979 (1959) ; Estate of Loughridge v. Commissioner of Internal Revenue, 183 F.2d 294 (10th Cir. 1950), cert. denied, 340 U.S. 830, 71 S.Ct. 67, 95 L.Ed. 609 (1950) ; Union Trust Company of Pittsburgh v. Driscoll, 138 F.2d 152 (3rd Cir. 1943), cert. denied, 321 U.S. 764, 64 S.Ct. 521, 88 L.Ed. 1061 (1944) ; Welch v. Terhune, 126 F.2d 695 (1st Cir. 1942).

make capacity a significant factor as far as section 2042 is concerned."

and held that:

"[T]he fact the powers over the policies were held by decedent in a fiduciary capacity is no bar to their constituting incidents of ownership under section 2042." 50 T.C. at 926.

We must disagree with the Tax Court's broad *per se* rule. We believe that there is a distinction between the issues arising under § 2038 where the decedent, as transferor of certain property, possesses at his death the power, even though in a fiduciary capacity, to revoke or change the transfer, and the issues in a case arising under § 2042 where the decedent is the transferee, in a fiduciary capacity, of powers constituting incidents of ownership in the insurance policies on his life. Where a decedent holds the requisite powers over policies on his life solely because he is a transferee, in a fiduciary capacity, of those powers, with no beneficial interest therein, such arrangement can hardly be construed as a substitute for testamentary disposition on decedent's part. Cf. Porter v. Commissioner of Internal Revenue, 288 U.S. 436, 444, 53 S.Ct. 451, 77 L.Ed. 880 (1933); Commissioner of Internal Revenue v. Chase National Bank, 82 F.2d 157, 158 (2d Cir. 1936).

Moreover, the Tax Court has previously held that where the decedent himself procured the policies on his life and transferred them to a trust, while retaining certain powers over the policies in a fiduciary capacity, the proceeds of the policies were not includible in the decedent's gross estate. In Estate of Newcomb Carlton, 34 T.C. 988 (1960), rev'd on other grounds, 298 F.2d 415 (2d Cir. 1962), the decedent originally procured 21 insurance policies on his life. He then transferred them to a trust, together with certain securities, with instructions to use the net income from the securities to pay the premiums on the life insurance policies. The decedent originally retained certain powers over the policies, but by a subsequent instrument he relinquished all rights over the trust except the right to the income from the trust in excess of that necessary to pay the premiums on the life insurance policies, and the right to appoint a co-trustee, including himself, for a co-trustee who had resigned. Decedent never exercised the power to appoint himself as co-trustee, but he retained that power until his death. Had he appointed himself as co-trustee he would have had, in conjunction with the other co-trustees, broad powers to borrow on the insurance policies or surrender them for their cash surrender value, powers which would constitute incidents of ownership in the policies. The Tax Court stated, however:

"Any control that decedent would have acquired over the insurance policies had he appointed himself co-trustee would have been control over the policies jointly with the corporate trustee as trustee only and such control would be solely for the benefit of the trust. Such control as trustee would not constitute incidents of ownership in the insurance policies in decedent except in his capacity as trustee for the benefit of the trust." 34 T.C. at 996.

In Estate of Bert L. Fuchs, 47 T.C. 199 (1966), the decedent was one of three business partners who funded a partnership purchase agreement with insurance policies on the lives of the respective partners. The purchase agreement provided that the beneficiaries would be the owners of the policies, that the beneficiaries would pay the premiums on the policies, and that the insureds would have no right, title or interest in the policies on their respective lives. Through inadvertence on the part of the insurance agent, the policies showed ownership to be in the insured rather than in the beneficiaries, thereby giving the insured the right under the policy to change the beneficiary and to surrender or assign the policies. Nevertheless the Tax Court held that the insured decedent did not possess any incidents of ownership in the policies on his life at the date of his death. While that determination was based on a finding that the insurance

policies were subject to the provisions in the partnership purchase agreement, the Tax Court clearly recognized the nature of the fiduciary relationship:

"Assuming, *arguendo*, that the insured of each policy herein possessed the naked power to change beneficiaries or make an assignment, we cannot say, in view of the partners' agreement regarding the policies, that the insured herein should be treated in any way differently than a common trustee. Each insured herein was under no less of a legal duty to respect the terms of the partners' agreement than a common trustee legally obligated to respect the terms of a trust indenture. Decedent merely had the same type of power over the * * * policies as a trustee's power to affect trust proceeds. We do not believe that this type of naked power alone is sufficient to bring the insurance proceeds within decedent's gross estate." 47 T.C. at 204.

We believe that the Tax Court in this case ignored what it had clearly recognized in these prior cases, i. e., the fundamental nature of the fiduciary relationship. Accordingly, we decline to hold that mere possession by a decedent of any powers in the nature of incidents of ownership in a fiduciary capacity invariably requires inclusion of the proceeds of the policies on the decedent's life in his gross estate.

Our rejection of the *per se* rule of the Tax Court majority opinion does not dispose of the case, however. In an opinion in which three other judges joined, Judge Simpson of the Tax Court similarly rejected the *per se* rule of the majority opinion but concurred in the result because of the special facts of this case. Judge Simpson viewed the powers held by decedent in his fiduciary capacity as broad enough to permit their exercise for his individual benefit. Specifically, the concurring opinion concluded that decedent had the power as trustee under paragraph Eighth of his wife's will to surrender the insurance policies for their cash surrender values. The amounts so

received could then have been added to the corpus of the trust, thereby increasing the income receivable from the trust by decedent as income beneficiary.

The estate's first response to this analysis of the facts is that decedent did not actually have any powers as trustee or any right to receive any increased income which would result from a surrender of the insurance policies because, at the date of his death, no distribution of assets had been made to the trust, and neither decedent nor any of the other co-trustees had been formally appointed as trustees of the testamentary trust by the state probate court. In support of this argument the estate contends that the normal period for the administration of decedents' estates in Michigan is eighteen months, and since decedent's death here occurred only fourteen months after his wife's death the testamentary trust could not reasonably have been created.

It appears, however, that eighteen months is the maximum period allowable by a Michigan probate court for the administration of an estate before the accrual of interest on pecuniary bequests begins. See In re Howlett's Estate, 275 Mich. 596, 602, 267 N.W. 743, 745 (1936). It does not appear that swifter administration of an estate is impossible. Decedent here had the power to become both trustee and life income beneficiary of the testamentary trust through the exercise of his powers as executor of the will. We believe that it is the existence of that power, not its exercise, which is determinative. Merely because decedent had not performed certain acts necessary to enable him to become trustee-beneficiary of the trust does not detract from his power to do so. Moreover, under the terms of paragraph Eighth of his wife's will decedent had the power in his capacity as *executor* as well as trustee to surrender the policies for their cash value. Accordingly, he could have surrendered the policies for their cash value while he was executor thereby enlarging the income producing ability of the corpus available for distribution in due course to

the testamentary trust. We therefore do not consider it significant that decedent had not been formally appointed trustee by the probate court.

The estate's second line of argument is that the fiduciary duty of loyalty imposed upon decedent in his capacity as executor and trustee would have prevented him from exercising any of the powers granted to him in any manner which would benefit himself to the detriment of the remainderman; that any powers granted to decedent which would appear to give him authority to perform acts which would benefit himself to the detriment of the remainderman were void as a matter of law.

It is a well established rule of law that a fiduciary cannot use his position to benefit himself in his individual capacity. *See e. g.,* Michigan Trust Co. v. Luton, 267 Mich. 547, 554, 255 N.W. 351, 353–354 (1934); Chambers v. Chambers, 207 Mich. 129, 136, 173 N.W. 367, 369–370 (1919); Sloan v. Silberstein, 2 Mich.App. 660, 673, 141 N.W.2d 332, 338 (1966); Bogert, Trusts and Trustees § 129 (2d ed. 1965); II Scott on Trusts § 170.23 (3rd ed. 1967). There is, however, an equally well established countervailing rule of law that a fiduciary may be authorized by the terms of the instrument creating his powers to do that which in the absence of such provision would be a violation of his fiduciary duty of loyalty. II Scott on Trusts § 170.9 (3rd ed. 1967). Michigan courts have recognized this rule. *See* Waddell v. Waddell, 335 Mich. 498, 506–507, 56 N.W.2d 257, 260–261 (1953).

Under the provisions of paragraph Eighth of decedent's wife's will, decedent was authorized, both as executor and as trustee, to surrender the policies on his life for their cash value. If this had been done the policies would have been transformed from non-income producing assets designed to benefit primarily the ultimate beneficiary of the trust into income producing assets (since it must be assumed that such proceeds would not remain idle), which would benefit decedent when he assumed his ca-

pacity as trustee and income beneficiary of the trust. We must therefore hold that under the facts of this case decedent could exercise powers in the nature of incidents of ownership in the policies to his individual benefit, and that therefore the proceeds of the policies were includible in his gross estate.

The judgment of the Tax Court is affirmed.