**ESTATE of John J. CONNELLY, Sr. (Deceased) and Ellen C. King, Executrix**

v.

**UNITED STATES of America, Appellant.**

**No. 76–1149.**

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1976.

Decided Feb. 17, 1977.

---

Adams, Adubato, Tafro & Connelly, Maurice H. Connelly, South Orange, N. J., for appellee.

Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Jonathan S. Cohen, Ann Belanger Durney, Tax Div., Dept. of Justice, Washington, D. C., for appellant.

Before ROSENN, FORMAN and GARTH, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

This is an appeal by the United States from a judgment of the United States District Court for the District of New Jersey granting the plaintiff, the Estate of John J. Connelly, Sr., a refund of $3,200.00, plus statutory interest, for federal estate tax paid under protest. The matter was submitted as though on cross-motions for summary judgment, on stipulated facts. The District Court concluded that the Commissioner erroneously included in decedent's gross estate the proceeds of a policy of group term life insurance. We affirm. The decedent did not possess any of the incidents of ownership of this insurance policy at the time of his death so as to require inclusion of the proceeds in the decedent's gross estate pursuant to Section 2042 of the Internal Revenue Code of 1954.

## I.

At the time of his death, on November 16, 1964, John J. Connelly, Sr. was covered by a non-contributory group term life insurance policy for which his employer paid.[1] The terms of the policy provided for the payment of a lump sum of $375.00 immediately upon the employee's death plus a monthly annuity of $248.44 for a period of 50 months.[2] The beneficiaries of the policy were irrevocably fixed and were of three classes. Benefit payments went to the surviving spouse of the employee, if living at the time of his death, until they were exhausted or until her death. If there were no surviving spouse, or if a surviving spouse died before receiving all the payments, the payments were made to the next of the classes,[3] who, like the spouse, would receive them until their exhaustion or the death of the beneficiary. Because payments terminated if no eligible beneficiaries lived to receive them, there was no assurance that the insurer would make any or all of the payments, and in no event would the payments ever be made to the estate of the insured.

At the time of his death, Connelly was a widower. The only member of the class of beneficiaries next entitled to the proceeds in the absence of a surviving spouse was his son, Robert. Thus, the lump sum payment and monthly annuities accrued to Robert.

The only substantive power Connelly possessed over the proceeds of the policy, at the time of his death, was to elect an optional mode of payment to the beneficiary.[4] However, such an election would have re-

---

1. Connelly was a retired employee of Humble Oil & Refining Company (now Exxon Corporation).

2. The amount of the monthly annuity was equal to one-half of the employee's normal monthly compensation to continue for a period determined by the length of the employee's service with the employer.

3. The next two classes, "preference relatives," were minor children of the insured and parents of the insured. If there were none of these, payments were to go to other "dependent relatives" who met contract requirements.

4. The pertinent provision in the contract states: "An election other than that specified above may be arranged during the lifetime of a covered individual with respect to monthly installments becoming payable to the covered individual's preference relatives if the covered individual, the employer by whom em-

quired the mutual agreement of Connelly, his employer and the insurance company.[5] This option would reduce the monthly payments by a selected percentage and increase the period of time over which the payments would be made. For example, he could arrange to have the monthly payments reduced by one-half and paid for twice as long. Regardless of which settlement option was utilized, the total amount paid to the beneficiary would remain the same. In the event that Connelly elected a settlement option as described and the beneficiary died before the payments were exhausted, the estate of the beneficiary would receive the difference between the amount actually received and the amount which would have been paid during the same period at the higher rate of payment had the option not been elected. Therefore, Connelly could not alter the amount that any beneficiary would receive; he possessed only the power to change the time at which the proceeds would be received. This constituted Connelly's entire power over the proceeds of the policy, which in no way could be exercised for his own economic benefit.

## II.

Section 2042(2) of the Internal Revenue Code of 1954 provides that the proceeds from life insurance receivable by any beneficiary other than his executor are includable in the decedent's gross estate, if immediately prior to his death he possessed any incident of ownership, exercisable either alone or in conjunction with any other person.[6] Incidents of ownership are not defined by the Code, but Treasury Regulation section 2042–1(c)(2) repeats almost verbatim[7] the legislative history of section 2042[8], and provides:

ployed and the Society mutually agree thereon."

5. Had Connelly been survived by a spouse he could have made a similar election with respect to the proceeds payable to her. Under the terms of the contract the election of an optional mode of payment to his wife could have been made by Connelly, himself, without the necessity of mutual agreement. Additionally, if Connelly did not elect the optional settlement, his surviving spouse could have done so, after his death, provided she had obtained the consent of Connelly's employer and the insurance company. However, Connelly did not have this power at the time of his death because his wife predeceased him. Furthermore, even had Connelly remarried before his death, his new spouse would not have been eligible to receive benefit payments because the contract required the "spouse" to have been married to the employee at the time of termination of his employment. Thus, the death of Connelly's wife permanently divested him of this power.

6. Cf. *Commissioner v. Noel's Estate*, 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159 (1965); *Landorf v. United States*, 408 F.2d 461, 187 Ct.Cl. 99 (1969); *United States v. Rhode Island Hospital Trust Co.*, 355 F.2d 7 (1st Cir. 1966).

7. While this language is almost identical to that found in the committee reports, there is a discrepancy which is revealing. The committee reports list "the right . . . to the economic benefits of the insurance" and "the power to change the beneficiary" (which does not necessarily benefit the insured) merely as examples of powers and rights which might constitute incidents of ownership. The regulations, however, state that "incidents of ownership" has reference to the "rights of the insured . . . to the economic benefits" and then includes "the power to change the beneficiary" as one of several rights and powers the possession of which arguably constitutes a right to economic benefit. It has been suggested that this distinction might mean that only those powers which may be exercised for the benefit of the insured were intended by the Treasury to come within section 2042(2). See Kropelnick, *"Incidents of Ownership" in Group Life Insurance, A Phrase Searching for Definition*, 52 N.C.L.Rev. 671, 678–79 (1974); Comment, *Estate Taxation of Life Insurance Policies Held by the Insured as Trustee*, 32 Md.L.Rev. 305, 310 n.23 (1972). At least one court has focused upon this disparate wording of the regulations because it found significant the fact that the decedent there could not have exercised his powers to derive for himself any economic benefits from the insurance policies. See *Estate of Skifter v. Commissioner*, 468 F.2d 699, 702 (2d Cir. 1972). Moreover, a number of courts have interpreted "incidents of ownership" in reference to a right to economic benefits from the policy. See, e. g., *Estate of Skifter v. Commissioner, supra; Chase Nat'l Bank v. United States*, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405 (1929); *Prichard v. United States*, 397 F.2d 60 (5th Cir. 1960); *Commissioner v. Chase Manhattan Bank*, 259 F.2d 231 (5th Cir. 1958).

8. See: S.Rep. No. 1631, 77th Cong., 2d Sess. p. 235, 1942–2 Cum.Bull., p. 677 and H.R.Rep. No. 2333, 77th Cong., 2d Sess. 163 (1942).

"For purposes of this paragraph, the term 'incidents of ownership' is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. . . ."

Appellant contends that decedent's power to elect optional modes of settlement exercisable in conjunction with his employer and the insurer, and the right to assign this power, constituted incidents of ownership. We do not agree.

### III.

In 1937 the Board of Tax Appeals was confronted with this precise argument in *Billings v. Commissioner*, 35 B.T.A. 1147 (1937), *acq.* 1937–2 Cum.Bull. 3. *Billings* involved a large number of life insurance policies, three of which gave the decedent much wider options as to the modes of settlement than those involved here. The Board of Tax Appeals held that "[t]he mere right to say when the proceeds of the insurance policies should be paid to the beneficiary does not amount to a control of the proceeds. They irrevocably belonged to the beneficiary from the date the policies were taken out." (35 B.T.A. at 1152).[9]

The Commissioner acquiesced in the *Billings* decision [10] and that acquiescence remained in effect until 1972 when it was "withdrawn and nonacquiescence [was] substituted therefor." [11]

**9.** Appellant argues that the holding in *Billings* is "totally inapposite to the facts and law relevant here" because it involved the taxability of insurance proceeds of policies taken out before 1918, when the first provision expressly taxing life insurance proceeds was enacted, and the case was decided before 1942, when the statutory incidents of ownership test was enacted.

The incidence of the estate tax is upon the value of the net estate of the decedent which is determined by including in the gross estate the value *at the time of death* of all property to the extent of the decedent's interest therein. Numerous cases, including *Billings*, itself, have held that regardless of the date on which the policies were taken out, the proceeds of insurance on a decedent's life are properly includable in his gross estate where he has retained until his death control of the proceeds. *See Chase Nat'l Bank v. United States*, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405 (1929); *Reinecke v. Northern Trust Co.*, 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410 (1929). The fact that several of the insurance policies in *Billings* were taken out before 1918 does not serve to distinguish *Billings* from the instant case.

Although the "incidents of ownership" test was not specifically made a part of the Code until 1942, it had really been in effect since 1929 with the decision of the Supreme Court in *Chase Nat'l Bank v. United States, supra.* Shortly after the decision in *Chase,* a Treasury Regulation, Treas.Reg. § 70 (1929), based on the holding of the case stated that in addition to paying the premiums on the policy, the insured must have possessed certain "incidents of ownership" in the policy before life insurance proceeds would be included in the decedent's gross estate. In 1934, the Treasury issued Regulation § 80 (1934) which made payment of premiums and incidents of ownership alternative tests to be applied in the determination of whether the proceeds payable to beneficiaries other than the estate were to be included in the decedent's gross estate for tax purposes. These alternative tests remained the standard until 1941, when the Treasury adopted "payment of premiums" as the exclusive test. However, the Revenue Act of 1942, ch. 619 § 404, 56 Stat. 798, adopted the alternative tests of the 1934 Regulation in cases where the proceeds were payable to beneficiaries other than the estate of the insured. Thus, the "incidents of ownership" test involved in the instant case had been in existence at least eight years before *Billings* was decided. See generally, *Incidents of Ownership Tests for Inclusion of Life Insurance Proceeds in Decedents' Gross Estate,* 54 Marq.L.Rev. 370 (1971); *Estate Taxation of Life Insurance Policies Held by the Insured As Trustee, supra,* at 307–309.

**10.** Ruling XVI–51–9097, Cum.Bull. 1937–2, p. 3.

**11.** Cum.Bull. 1972–1, p. 3.

In 1970, the Sixth Circuit focused on the meaning of "incidents of ownership," in *Estate of Fruehauf v. Commissioner,* 427 F.2d 80 (6th Cir. 1970). There, decedent's wife paid all the premiums on several insurance policies written on the life of decedent. Mrs. Fruehauf predeceased her husband by fourteen months, leaving a will naming decedent co-executor of her estate, and co-trustee and life beneficiary of a trust to which the life insurance policies passed. Mr. Fruehauf was given broad powers in a fiduciary capacity over the insurance policies. The Tax Court held that Fruehauf possessed incidents of ownership in the policies, regardless of the capacity in which such incidents of ownership could be exercised, and included the proceeds in his gross estate.[12]

Although the Sixth Circuit affirmed, it rejected the "Tax Court's broad *per se* rule" that the capacity in which powers are held should not be considered in determining whether such powers constitute incidents of ownership. The court stated that where the requisite powers over policies on his life have been transferred to a decedent, with no beneficial interest therein, "such arrangement can hardly be construed as a substitute for testamentary disposition on decedent's part."[13] 427 F.2d at 84.[14] The court held that decedent's powers were sufficient to constitute incidents of ownership only because as lifetime beneficiary of the trust, he could exercise his powers in such a way as to receive economic benefit from the insurance.

In *Estate of Skifter v. Commissioner,* 468 F.2d 699 (2d Cir. 1972), decedent made an irrevocable assignment of nine insurance policies on his life to his wife, more than three years before his death. His wife predeceased him and under her will the policies became part of a testamentary trust with the insured as trustee. Although Skifter's powers to effect changes in the beneficial ownership of the policies or their proceeds were broad, he could not exercise any power for his own economic benefit.

The Second Circuit, affirming the Tax Court, held that where powers which may not be exercised so as to benefit the decedent are conferred upon him in his capacity as trustee, the "incidents of ownership" test of section 2042(2) is not met. The court concluded that while non-beneficial powers *retained in connection with a transfer* of the beneficial interest in the policies might constitute incidents of ownership, it distinguished that situation from *Skifter,* where decedent *received a grant* of non-beneficial powers.

The only case since *Billings* in 1937 to directly consider the issue whether the right to select a settlement option is an "incident of ownership" is *Estate of Lumpkin v. Commissioner,* 474 F.2d 1092 (5th Cir. 1973). The *Lumpkin* court considered the same insurance policy involved here. However, the decedent in *Lumpkin* possessed certain powers which Mr. Connelly did not: in *Lumpkin,* the decedent was still employed when he died and thus could quit his job thereby cancelling the policy; Mr. Connelly was retired. The decedent in *Lumpkin* was survived by a widow and under the terms of the policy had the power to *unilaterally* exercise a settlement option; Mr. Connelly had no unilateral powers. In *Lumpkin,* the decedent was found to have the right to assign the power to exercise the settlement option; under the law of New Jersey, Mr. Connelly did not have that right.[15]

---

12. *Estate of Fruehauf,* 50 T.C. 915 (1968).

13. *Cf. Porter v. Commissioner,* 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880 (1933); *Commissioner v. Chase Nat'l Bank,* 82 F.2d 157, 158 (2d Cir. 1936).

14. Several cases had previously held that the capacity in which incidents were held was important. *See, e. g., Estate of Fuchs,* 47 T.C. 199 (1966); *Estate of Carlton,* 34 T.C. 988 (1960),

*rev'd on other grounds,* 298 F.2d 415 (2d Cir. 1962).

15. Under Treasury Regulation section 2042–1(c)(5), applicable state law must be given appropriate effect in determining whether the decedent possessed incidents of ownership. *Landorf v. United States, supra,* at 466. While the question of incidents of ownership is ultimately one of Federal tax law, we must look to the insurance law of New Jersey to determine whether an employee may assign his rights to

Relying on *Billings* and the language of Treasury Regulation 20.2042–1(c)(2), the Tax Court held that the non-beneficial power possessed by decedent was not an appropriate predicate for the estate tax.[16] The Court of Appeals reversed, holding that Lumpkin possessed an incident of ownership in the insurance policy.

The Fifth Circuit inferred from the legislative history of section 2042 that Congress was attempting to tax the value of life insurance proceeds over which the insured at death still possessed a substantial degree of control. The court framed the question of incidents of ownership in terms of the "right to alter the time and manner of enjoyment." Relying on an analogy to two trust cases, *Lober v. U. S.*, 346 U.S. 335, 74 S.Ct. 98, 98 L.Ed. 15 (1953)[17] and *United States v. O'Malley*, 383 U.S. 627, 86 S.Ct. 1123, 16 L.Ed.2d 145 (1966),[18] the court concluded that elements leading to inclusion in the gross estate there were also indicators of incidents of ownership under § 2042. The court stated: "[i]n view of the Congressional intention to make the estate tax treatment of life insurance roughly analogous to that bestowed upon other types of property, somewhat of an anomaly would be created if power over the time and manner of enjoyment was said to impart enough control to activate §§ 2036 and 2038 yet not enough to make it an 'incident of ownership' within the context of § 2042." 474 F.2d at 1097.

Appellant argues that *Lumpkin* controls the instant appeal.[19] We disagree for a number of reasons. First, in our opinion, *Lumpkin* does not accurately reflect the applicable law. Second, the rights possessed by the decedent in *Lumpkin* were greater than those possessed by Mr. Connelly.

The courts in *Skifter* and in *Lumpkin* concluded that Congress intended to give life insurance policies estate tax treatment

exercise a settlement option. *Cf. Morgan v. Commissioner,* 309 U.S. 78, 80, 60 S.Ct. 424, 84 L.Ed. 585 (1940); *Burnet v. Harmel,* 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199 (1932).
   At the time Mr. Connelly died in 1964, the insurance law of New Jersey did not allow an insured under a group term life policy to assign any of his rights under the contract. Presently, such an assignment would be permissible under N.J.S.A. 17B:24–4. This statute is a reenactment by revision of N.J.S.A. 17:34–32.3, enacted as NJPL 1969, c. 97, repealed (as part of the revision) by NJPL 1971, c. 144, effective January 1, 1972. Therefore, Mr. Connelly could not have made an assignment of his power to select an alternative mode of settlement.

16. *Estate of James H. Lumpkin, Jr.,* 56 T.C. 815, 824 (1971).

17. In *Lober,* the decedent created several irrevocable trusts for the benefit of his children but had named himself trustee, retaining the power to accelerate the remainder. The court held that the predecessor to section 2038 required inclusion of the value of the trusts in decedent's gross estate. Under state law, the beneficiaries had a vested interest in the trust proceeds. Although the taxpayer argued that the power retained by the decedent was not a power to "alter, amend or revoke," the Court concluded that
   "[a] donor who keeps so strong a hold over the actual and immediate enjoyment of what he puts beyond his own power to retake has not divested himself of that degree of control

which § 811(d)(2) requires in order to avoid the tax." 346 U.S. at 337, 74 S.Ct. at 100.

18. *O'Malley* held that the power to alter the time and manner of enjoyment was significant and sufficient to be included in decedent's gross estate under the forerunner to section 2036. There, as in *Lober,* the decedent created irrevocable trusts and named himself co-trustee, with the power not only to accumulate income but to thereby add it to the principal. Thus decedent had the power to pay that income to the beneficiaries or to accumulate it and hold it for the remaindermen of the trusts. This obviously came within § 811(c)(1)(B)(ii) as a retention of "the right to designate the persons who shall possess and enjoy the property or the income therefrom."

19. It is interesting to note that even if *Lumpkin* were to be widely followed it should not have a significant effect upon those who are covered by group term life insurance policies. One commentator has suggested that employers could easily draft policy clauses so as to require the employees to make an irrevocable election at the inception of their coverage. Such an arrangement would thereby divest the insured of the power. *See Comment,* 10 Houston L.Rev. 984, 986 (1973). Indeed, as pointed out by the District Judge here, the employer in the instant case eliminated any options in a deceased employee or retiree on December 27, 1966.

roughly equivalent to that accorded other types of property under related sections of the Code. Thus, both courts examined the treatment given other property under sections 2036, 2037 and 2038, in defining "incidents of ownership."

■ The federal estate tax is imposed on the privilege of transferring property at death coupled with "taxes upon other types of transfers that have some of the aspects of a testamentary transfer and would otherwise be resorted to in order to escape a tax limited to strictly testamentary transfers." [20] Therefore, whether the right to exercise a settlement option is an incident of ownership depends in part upon whether the retention of such right is a "substitute for testamentary disposition of property." *See Porter v. Commissioner*, 288 U.S. 436, 444, 53 S.Ct. 451, 77 L.Ed. 880 (1933); *Commissioner v. Chase Nat'l Bank*, 82 F.2d 157, 158 (2d Cir. 1936); H.R.Rep. No. 767, 65th Cong., 2d Sess. 22 (1919). In the instant case, Mr. Connelly did not purchase the insurance. It was a group term life insurance policy provided solely by his employer. The power to select an alternative mode of settlement, here, is not a substitute for testamentary disposition of property.

The *Lumpkin* court strongly relied on what it viewed as the intent of Congress to tax life insurance and other types of property equivalently. However, *Lumpkin's* construction of § 2042 would make it the only section in the Code that could reach property in which the decedent had no beneficial interest and over which he had no power exercisable for his own benefit.[21] It is clear that Congress does not consider life

insurance to be inherently testamentary.[22] Thus if *Lumpkin* is correct in concluding that Congress meant to have the tax consequences of life insurance conform to other types of property, it would certainly seem more logical that Congress intended to equate incidents of ownership with the right to economic benefits of the policy. Indeed, there is a long line of cases which explicitly makes that equation. See, e. g., *Estate of Skifter v. Commissioner*, 468 F.2d 699 (2d Cir. 1972); *Estate of Fruehauf v. Commissioner*, 427 F.2d 80 (6th Cir. 1970); *Chase Nat'l Bank v. United States*, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405 (1929); *Prichard v. United States*, 397 F.2d 60 (5th Cir. 1960); *Commissioner v. Chase Manhattan Bank*, 259 F.2d 231 (5th Cir. 1958).

Furthermore, Treasury Regulation section 2042–1(c)(2) specifically provides that "incidents of ownership" refers "to the right of the insured or his estate to the economic benefits of the policy." Mr. Connelly had no rights whatsoever to the economic benefits of the policy.

*Lumpkin's* reliance upon *Lober* and *O'Malley* in defining section 2042 is misplaced. The facts of *Lober* and *O'Malley* were specifically covered by other sections of the Code. Moreover, the powers involved in *Lober* and *O'Malley* are directly parallel to explicit provisions of the regulations for life insurance, Reg. 20–2042–1(c). If the same powers which were involved in *Lober* and *O'Malley* were translated to the parallel provisions for life insurance, the explicit language of the regulations would require inclusion. Both decisions are controlled by explicit regulations. Such is not

20. Lowndes, *An Introduction to the Federal Estate and Gift Taxes*, 44 N.C.L.Rev. 1, 4 (1965).

21. With the exception of sections 2040 and 2041, every other section of the Code requires that the decedent have made an incomplete transfer of the property. An incomplete transfer requires that the decedent have had a beneficial interest in property of which he has not fully divested himself.

Under Section 2040 the value of the gross estate includes the value of all property to the extent of the interest therein held as joint ten-

ants by the decedent and any other person. Although there is no "transfer" to the surviving joint tenant, § 2040 taxes the increased right of enjoyment which passes to the surviving tenant as a substitute for a testamentary disposition.

Section 2041 taxes property over which the decedent had a general power of appointment which is economically beneficial to himself or his estate.

22. *See* H.R.Rep.No.1337, 83rd Cong., 2d Sess. A316–17, B14–15 (1954), U.S.Code Cong. & Admin.News 1954, p. 4025.

the case here. *Lumpkin* erroneously extended *Lober* and *O'Malley* to a fact situation foreign to both and controlled by different statutory provisions.

The decedents in both *Lober* and *O'Malley* possessed the power to alter the time of the payments, which could be exercised to change the beneficiary of the proceeds. In *Lober* the decedent retained the power to accelerate the remainder of the trust, thereby cutting off the remaindermen and ensuring that the income beneficiaries would receive the entire corpus of the trust. In *O'Malley* the decedent reserved the power to accumulate income and add it to the principal, thereby reducing the payments to the income beneficiaries and increasing the benefits of the remaindermen. Possession of the power to change the beneficiary has long been held to constitute an incident of ownership.[23] In this case, however, the decedent could change neither the beneficiaries themselves, nor the amounts the designated beneficiaries would receive. Regardless of the time of the payments, the designated beneficiary or his estate would receive the same amount. Connelly, therefore, unlike the decedents in *Lober* and *O'Malley*, could not alter the amount that any beneficiary would receive; he possessed only the power to change the time at which the proceeds would be received.

■ Connelly could, by electing to prolong the time of the payments, attempt to ensure that a designated beneficiary's estate, rather than the beneficiary himself, would receive a percentage of the insurance proceeds. However, this speculative power is so insignificant as compared with the power to change the beneficiaries, retained by the decedents in *Lober* and *O'Malley*, that it should not be considered an incident of ownership.

*Lumpkin* cited *Skifter* as authority for the proposition that Congress intended estate taxation of all property to be analogous, yet it subverted the crux of the *Skifter* opinion. *Skifter* focused on whether the

property would be taxed under other sections of the Code if it were not life insurance. *Lumpkin* focused on whether the power held by the decedent would have been sufficient under those sections to result in inclusion. *Skifter* properly required that the nature and source of the power, the way in which it is held, and whether the retention of power is a substitute for testamentary disposition of the property, be examined. *Lumpkin* completely ignored the distinctions between the type of property involved.

Moreover, as discussed above, Mr. Connelly's rights were not as broad as those possessed by the decedent in *Lumpkin*. The *Lumpkin* court found it important that the decedent "could easily have assigned the right to elect optional settlements, thereby completely divesting himself of control over the insurance proceeds and avoiding inclusion of their value within his gross estate." 474 F.2d at 1097–98. Here, decedent had no power to assign his rights under the contract. It was forbidden by New Jersey law.

Mr. Connelly's sole power to select a settlement option with the mutual agreement of his employer and the insurer did not give him a substantial degree of control sufficient to constitute an incident of ownership. *Landorf v. United States,* 408 F.2d 461, 187 Ct.Cl. 99 (1969); *Old Point National Bank, Executor,* 39 B.T.A. 343 (1939); *Estate of Chester H. Bowers,* 23 T.C. 911 (1955). The power gave him no rights to the economic benefits of the policy. He had no power which by itself has ever been held to constitute an incident of ownership. Notwithstanding withdrawal of acquiescence by the Commissioner, *Billings* [24] remains viable and controls the instant case as held by the District Court. The proceeds of the insurance should not have been included in decedent's gross estate.

The judgment of the District Court will be affirmed.

---

**23.** *See Commissioner v. Noel's Estate,* 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159 (1965), and cases cited therein.

**24.** 35 B.T.A. 1147 (1937).